1  PETER C. ANDERSON
   UNITED STATES TRUSTEE
2  JILL M. STURTEVANT (State Bar No. 089395)
   ASSISTANT UNITED STATES TRUSTEE
3  ALVIN MAR, State Bar No. 151482
   TRIAL ATTORNEY
4  OFFICE OF THE UNITED STATES TRUSTEE
   725 South Figueroa Street, 26th Floor
5  Los Angeles, California 90017
   Telephone No. (213) 894-4219
6  Facsimile No. (213) 894-2603
   email: alvin.mar@usdoj.gov
7

8

9           **UNITED STATES BANKRUPTCY COURT**

10          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11              **LOS ANGELES DIVISION**

12                                     )    Case Number 2:10-bk-63810-BB
   In Re:                              )
13                                     )    Chapter 7
                                       )
14                                     )    **UNITED STATES TRUSTEE'S**
   **ARMANDO FRANCICO DELGADO, JR.**  )    **NOTICE OF MOTION AND MOTION**
15 **AND CHERYL DELGADO,**             )    **TO DISMISS CHAPTER 7 CASE PURSUANT**
                                       )    **TO 11 U.S.C. § 707(b)(1), (b)(2) AND (3)(B) AND**
16              Debtors.               )    **CONTINGENT MOTION TO EXTEND BAR**
                                       )    **DATE FOR FILING COMPLAINT UNDER 11**
17                                     )    **U.S.C. § 727 OBJECTING TO DEBTORS'**
                                       )    **DISCHARGE; MEMORANDUM OF POINTS**
18                                     )    **AND AUTHORITIES AND DECLARATION OF**
                                       )    **WENDY CAROLE SADOVNICK IN SUPPORT**
19                                     )    **THEREOF**
                                       )
20                                     )    DATE:       APRIL 7, 2011
                                       )    TIME:       10:00 a.m.
21                                     )    CTRM:       1475
                                       )                255 E. Temple Street
22 _____)                Los Angeles, California 90012

23

24      **TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY**

25 **JUDGE FOR THE CENTRAL DISTRICT OF CALIFORNIA, DEBTORS, DEBTORS'**

26 **COUNSEL, CREDITORS AND ALL PARTIES IN INTEREST.**

27      PLEASE TAKE NOTICE THAT, on April 7, 2011, at 10:00 a.m., or as soon thereafter as

28 the matter may be heard, Peter C. Anderson, United States Trustee for the Central District of

                                   1

California (hereafter "U.S. Trustee"), through the undersigned attorney, will and hereby does move this Court to enter an Order dismissing this case under 11 U.S.C. § 707(b)(1) and (b)(2) and/or (3)(B). In the alternative, in the event that the requested case dismissal is not granted, the U.S. Trustee also moves the Court for an order extending the filing deadline for the U.S. Trustee only for commencing an adversary action under § 727 seeking denial of the Debtor's discharge.

If you wish to oppose or respond to this motion, you must file a written response with the Clerk of the United States Bankruptcy Court at Edward R. Roybal Building and Courthouse, 255 E. Temple Street, Room 940, Los Angeles, California 90012, serve a copy of it on the United States Trustee at the address set forth above and upon the Chapter 7 Trustee (see attached service list) no less than 14 days prior to the above hearing date. If you fail to file a response to this motion within such time period, the Court may treat such failure as a waiver of your right to oppose the motion and may grant the requested relief.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, the Declaration of Wendy Carole Sadovnick, the Request for Judicial Notice, and all other papers and pleadings on file with this Court.

DATED: March 2, 2011

Respectfully submitted,

PETER C. ANDERSON
UNITED STATES TRUSTEE

By:    ALVIN MAR
Attorney for the United States Trustee

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES .............................. 3

I.     INTRODUCTION ................................................. 3

II.    JURISDICTION AND STANDING ................................... 3

III.   FACTUAL BACKGROUND ........................................ 5

IV.    DEBTORS' CASE SHOULD BE DISMISSED AS AN ABUSE OF CHAPTER 7
       ............................................................ 5

       A.   Dismissal Under § 707(b) Generally ............................ 5

            1.   The Debtors Owe Primarily Consumer Debts ................ 6

       B.   Debtors' Case Is Presumptively Abusive Pursuant to 11 U.S.C. §
            707(b)(2) ................................................ 6

            1.   Debtors have Understated Income ........................ 7

            (a)  Debtors have Under-Reported Actual Income ................ 7

            2.   Debtors have Overstated Allowed Expense Deductions ........ 7

            (a)  The Debtors have overstated/understated certain allowable expense
                 deductions ........................................... 8

            3.   A Debtor Who Attempts to Rebut the Presumption of Abuse of
                 §707(b)(2)(B) Must Demonstrate "Special Circumstances" .... 10

            4.   Dismissal Is Justified Because The Presumption Of Abuse Arises
                 ..................................................... 11

       C.   Dismissal Pursuant to § 707(b)(3)(B) Under The Totality Of
            Circumstances Of The Debtors' Financial Situation Is Applicable and
            Demonstrates Abuse ...................................... 12

            1.   The Standard for Finding Abuse is Lower than Finding Abuse
                 Under the Pre-BAPCPA "Substantial Abuse" Standard ....... 13

            2.   The Ability to Repay Unsecured Debts is Primary Ground for
                 Dismissal Under the "Abuse" Standard of § 707(b)(3)(B). ..... 14

i

3.    CMI Amounts Set Forth in § 707(b)(2) Establish Guideline
Standards for "Ability to Pay" Under the "Totality of the
Circumstances" Test Pursuant to § 707(b)(3)(B) . . . . . . . . . . . . 14

4.    The Debtors have the Ability to Repay Unsecured Debt and the
Court Should Dismiss this Case as Abusive . . . . . . . . . . . . . . . 17

(a)    The Debtors' Schedules Show that the Debtors have the Ability to
Repay the Scheduled Unsecured Debts . . . . . . . . . . . . . . . . . . . . 17

(b)    Dismissal of the Debtors' Case is Warranted Under §707(b)(3)(B)19

V.    IN THE ALTERNATIVE, IF A MOTION TO DISMISS PURSUANT TO
§707(b) (2) OR (3) IS NOT GRANTED, THE U.S. TRUSTEE REQUESTS AN
ORDER EXTENDING THE BAR DATE FOR THE FILING OF A
COMPLAINT FOR THE DENIAL OF DISCHARGE UNDER §727 . . . . . . . . 19

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## CASES

*In re Attanasio,* 218 B.R. 180 (Bankr. N.D. Ala. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Baeza,* 398 B.R. 692 (Bankr. E.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Castle*, 362 B.R. 846 (Bankr. N.D. Ohio 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Colgate*, 370 B.R. 50, 54 (Bankr. E.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Durczynski*, 450 B.R. 880 (Bankr.N.D.Ohio 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Egebjerg*, 574 F3d 1045 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Gillead*, 171 B.R. 886 (Bank.E.D.Cal 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Haney*, 2006 WL 3020961, *2, *unpublished slip copy*, (Bankr. W.D. Ky. October 19, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Harrison v. PPG Industries, Inc.,* 446 U.S. 547 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Hoffman*, 413 B.R. 191 (Bankr.M.D.Pa. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*In re James*, 345 B.R. 664 (Bankr. N.D. Iowa 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Kelly*, 841 F.2d 908 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18

*In re Lamanna*, 153 F. 3d 1 (1st Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Maya*, 374 B.R. 750 (Bankr. S.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re McNamara*, 2009 WL 1606985 (Bankr.M.D.Pa. 2009) . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*In re Mestemaker*, 359 B.R. 849 (Bankr.N.D.Ohio 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Mondragon*, 2007 WL 2461616 (Bankr. D.N.M. Aug. 24, 2007) . . . . . . . . . . . . . . . . . 16

*In re Pak*, 343 B.R. 239 (Bankr. N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*In re Pennington*, 348 B.R. 647 (Bankr. D.Del. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Price*, 353 F. 3d 1135 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Reed*, 422 B.R. 214 (C.D.Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Ricci*, 2009 WL 3381517 (Bankr.M.D.Fla. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*In re Ross-Tousey*, 549 F.3d 1148 (7th Cir. Dec. 17, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sacramento Regional County Sanitation District v. Reilly*, 905 F. 2d 1262 (9th Cir. 1990) . . . . 11

**STATUTES**

11 U.S.C. § 101(10A) ............................................................. 5

11 U.S.C. § 101(8) ............................................................... 6

11 U.S.C. § 341(a) ......................................................... 4, 9, 19

11 U.S.C. § 704(b)(1)(A) .......................................................... 4

11 U.S.C. § 704(b)(2) ............................................................. 4

11 U.S.C. § 707(b)(1) ..................................................... 1-5, 12, 13, 20

11 U.S.C. § 707(b)(2) ..................................................... 1-7, 11, 12, 14, 19

11 U.S.C. § 707(b)(2)(B) ......................................................... 10

11 U.S.C. § 707(b)(3) ..................................................... 3, 4, 6, 14-16, 19

11 U.S.C. § 707(b)(3)(B) ................................................... 1-3, 12, 14-17, 19

11 U.S.C. § 727 .......................................................... 1, 2, 19

28 U.S.C. § 1334(a) and (b) ....................................................... 3

28 U.S.C. § 151 .................................................................. 3

28 U.S.C. § 157 (b)(2)(A) and (B) .................................................. 3

28 U.S.C. § 157(a) and (b)(1) ..................................................... 3

**RULES**

Federal Rules of Bankruptcy Procedure 1017 .................................... 4, 19

Federal Rules of Bankruptcy Procedure 4004(a) and (b) ........................... 19

Federal Rules of Bankruptcy Procedure 9006(a) ................................... 4

Federal Rules of Bankruptcy Procedure 9017 ..................................... 4

Federal Rules of Evidence 201 ................................................... 4

Federal Rules of Evidence 801(d) ................................................ 4

**OTHER AUTHORITIES and SECONDARY MATERIALS**

146 Cong. Rec. S11683-11729, Dec. 2000 ........................................ 13

Wedoff, Eugene, *Judicial Discretion to Find Abuse Under § 707(b)(3)*, 25 APR Am.Bankr.Inst.J. 1, 52 (April 2006) ............................................................ 15

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The instant Chapter 7 case filed by Debtors, Armando Francico Delgado, Jr and Cheryl Delgado[1] ("Debtors") demonstrates the type of abuse § 707(b) was intended to prevent.  The U.S. Trustee's investigation reveals that the Debtors have understated monthly income and overstated expense deductions on his Means Test.  Not only does the Debtors' case represent presumed abuse under 11 U.S.C. § 707(b)(2), in that the **Debtors have $729.43 in monthly disposable income after allowed deductions (equaling $43,765.80 over a five year period, or 75% of the Schedule F debt)**, the totality of the circumstances of the Debtors' financial situation demonstrates abuse under 11 U.S.C. § 707(b)(3)(B) because the Debtors clearly have the ability to repay a sufficient amount of the scheduled unsecured debt.

Accordingly, whether based on the presumption of abuse, or the actual abuse demonstrated by the totality of the circumstances, this court should dismiss Debtors' case.

### II.    JURISDICTION AND STANDING

This Court has jurisdiction of this matter under 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and (b)(1) and 28 U.S.C. § 151. This is a core proceeding under 28 U.S.C. § 157 (b)(2)(A) and (B).  This motion is filed pursuant to 11 U.S.C. § 707(b)(1), (b)(2) and (b)(3).[2]

---

[1]The United States Trustee notes that Debtors' initial bankruptcy petition was captioned 'Delgado, Armando Francico Jr and Delgado, Cheryl'.  See Exhibit 1 of the United States Trustee's Request for Judicial Notice filed concurrently herewith.  As set forth under 11 U.S.C. §§302 and 541 on joint cases and property of the estate, it appears at the time of filing, that Debtors intended to file jointly and that an estate pursuant to 11 U.S.C. §541 was then created.  However, the United States Trustee notes that Debtors' counsel, without hearing or court approval, on December 22, 2010 filed an amendment to the voluntary petition apparently meant to delete co-Debtor, Cheryl Delgado, from the petition and thereafter on January 10, 2011 refiled Schedules, Statement of Financial Affairs and Means Test Form under the case name of 'Delgado, Armando Francico Jr.'.  The caption on the U.S. Trustee's motion incorporates both Debtors' names as it appears that Debtors should have obtained court approval prior to effectuating the change in the parties to the petition.

[2] All further references to statutes will be to Title 11 of the United States Code, also known as the Bankruptcy Code.

1    Section § 707(b)(1) provides that upon motion of the United States Trustee, a court may

2    dismiss a Chapter 7 case filed by an individual debtor who owes primarily consumer debts if it

3    finds that the granting of relief would be an abuse of the provisions of Chapter 7 of the

4    Bankruptcy Code.[3] Further, § 704(b)(1)(A), provides that the U.S. Trustee must review the

5    materials filed by the Debtor and file a Statement of Presumed Abuse or other applicable

6    Statement within 10 days of the conclusion of the § 341(a) meeting. Based on that requirement,

7    on February 3, 2011, the U.S. Trustee filed a Statement of Presumed Abuse ("10 Day

8    Statement"). Section 704(b)(2) and Federal Rules of Bankruptcy Procedure 9006(a) provide that

9    the U.S. Trustee must file any motion to dismiss or convert within 30 days of the filing of the 10

10   Day Statement. Pursuant to that requirement, the U.S. Trustee has filed this Motion within thirty

11   (30) days of the 10 Day Statement, pursuant to Federal Rule of Bankruptcy Procedure 9006(a).

12   The U.S. Trustee's motion pursuant to § 707(b)(2) is therefore timely and procedurally proper.

13   Under the Federal Rules of Bankruptcy Procedure 1017(e)(1), motions to dismiss a

14   Chapter 7 case pursuant to § 707(b) that are not based on the presumption of abuse contained in

15   § 707(b)(2) must be filed within 60 days after the first date set for the meeting of creditors under

16   § 341(a), unless the deadline is extended by the court. The initial deadline to file a motion

17   pursuant to § 707(b)(3) was March 25, 2011.[4] Thus, the motion to dismiss pursuant to §

18   707(b)(3) is timely and procedurally proper.

19

20

21

22       [3] *See* 11 U.S.C. § 707(b)(1).

23       [4]*See Case Docket*, attached for the Court's convenience to the Declaration of Wendy
         Carole Sadovnick, hereinafter 'Sadovnick Declaration', as Exhibit **"1"** in support of the U.S.
24       Trustee's Motion to Dismiss, in particular, docket entry numbered 6.

25           The U.S. Trustee respectfully requests that the Court take judicial notice of Debtors'
         Petition, Schedules, Statement of Financial Affairs and other documents filed therewith and any
26       amendments thereto which are in the Court's file, pursuant to Fed. R. Evid. 201, as made
         applicable to bankruptcy proceedings by Fed. R. Bankr. P. 9017. The information contained in
27       these documents, signed under penalty of perjury by Debtors, are admissible admissions of
         Debtors pursuant to Fed. R. Evid. 801(d). *See also* the U.S. Trustee's Request for Judicial
28       Notice ("RJN") filed concurrently with this Motion.

4

III.    **FACTUAL BACKGROUND**

1.      The Debtors filed a voluntary Chapter 7 petition filed in the United States Bankruptcy Court for the Central District of California, Los Angeles Division on December 17, 2010.[5]

2.      The Debtors' debts are primarily consumer in nature.  The Debtors checked the box on the first page of the Voluntary Petition indicating that their debts are primarily consumer debt.  The Debtors' nonpriority unsecured debt totals $58,088.00.[6]

3.      The § 341(a) Meeting of Creditors was initially set for January 24, 2011.

4.      In the Debtors' Amended Statement of Current Monthly Income and Means Test Calculation also known as Official Form 22A ("Form 22A") filed on January 24, 2011, the Debtors state that the annualized Current Monthly Income (hereafter "CMI")[7] is $122,199.96.[8] While the U.S. Trustee asserts that the Debtors have understated their CMI, the applicable state median family income for the Debtors' family of four individuals is $77,596.00.  Accordingly, even using Debtors' understated income, the CMI exceeds the applicable state median family income amount.

IV.    **DEBTORS' CASE SHOULD BE DISMISSED AS AN ABUSE OF CHAPTER 7**

A.     **Dismissal Under § 707(b) Generally**

Section 707(b)(1) provides that the court may dismiss a case filed by an individual whose debts are "primarily consumer debts" if it finds that granting discharge relief would be an "abuse" of the provisions of chapter 7.[9]  Courts may determine that either (1) a presumption of abuse arises pursuant to § 707(b)(2), or (2) if the presumption does not arise or is rebutted, the

---

[5]*See* U.S. Trustee's RJN, Exhibit 1, filed concurrently with this Motion, Case Docket.

[6]*See* U.S. Trustee's RJN, Exhibits 1 and 3, filed concurrently with this Motion, Debtors' Schedule F.

[7]As defined by §§ 101(10A) and 707(b)(2) of the Bankruptcy Code.

[8]*See* U.S. Trustee's RJN, Exhibit 5, filed concurrently herewith, Debtors'Amended  Form B22A, at Line 13.

[9]11 U.S.C. § 707(b)(1).

5

1  debtor's bad faith or the totality of the circumstances of the debtor's financial situation point to

2  abuse.[10]

### 1.    The Debtors Owe Primarily Consumer Debts

4      In this case, the debt is "primarily consumer debt."  "Consumer debt" is defined as a

5  "debt incurred by an individual primarily for a personal, family, or household purpose."[11]  The

6  Ninth Circuit interprets "primarily" to mean that the overall ratio of consumer to non-consumer

7  debt is greater than 50%.[12]  The Debtors indicated in the petition that the nature of the debt is

8  consumer debt.

9  **B.    Debtors' Case Is Presumptively Abusive Pursuant to 11 U.S.C. § 707(b)(2)**

10      Section 707(b)(2)(A)(I) provides, in pertinent part:

11          "...the court shall presume abuse exists if the debtor's current
           monthly income reduced by [certain deductions] and multiplied by
12          60 is not less than the lesser of–
           (I) 25 percent of the debtor's nonpriority unsecured claims in the
13          case or $7,025, whichever is greater; or

14                  (II) $11,725."[13]

---

[10]11 U.S.C. § 707(b)(2), (3).

[11]11 U.S.C. § 101(8).

[12]*See In re Kelly*, 841 F.2d 908, 913 (9th Cir. 1988).  The most common consumer debts
are home mortgages, credit card debts and personal loans.  *Id.*

[13]Pursuant to 11 U.S.C. § 104(b), the Judicial Conference of the United States published
in the Federal Register (at 72 FR 7082) its Revision of Certain Dollar Amounts in the
Bankruptcy Code Prescribed Under Section 104(b) of the Code, effective for bankruptcy cases
filed after April 1, 2010.  As applicable to the instant case, under the B22A Means Test, the
presumption of abuse arises under § 707(b)(2)(A)(I) when the Debtor's net disposable income
over a 60-month period is the lesser of $11,725.00 or the greater of 25 percent of the debtor's
nonpriority unsecured claims in the case or $7,025.00.  Therefore, the abuse presumption
threshold increases from $182.50 to $195.42 per month.

The purpose of the means test is to "help the courts determine who can and who cannot repay their debts and, perhaps most importantly, how much they can afford to pay."[14]   In other words, it is "intended to ensure that debtors repay creditors the maximum they can afford."[15]

Under this provision, the Debtors' case is presumptively abusive because a correctly filled-out Form 22A would show that the Debtors have $729.43 in monthly disposable income after allowed deductions, which projects to more than $43,765.00 over 60 months.  Rather than reflecting this amount, however,  the Debtors' Form 22A contains erroneous information which results in a significant understatement of the Debtors' monthly disposable income.  In particular, the Debtors have understated income and overstated allowed expense deductions on Form 22A.

### 1.    Debtors have Understated Income

### (a)    Debtors have Under-Reported Actual Income

On Debtors' January 24, 2011 Amended Form 22A, the Debtors indicated that the monthly income is $10,183.33.  The U.S. Trustee's investigation, however, reveals that the Debtors substantially under-reported actual income by $1,127.27.[16]   Accordingly, Debtors' Amended Means Test Form, at Line 3, should have listed gross income of  $11,310.60, rather than the $10,183.33 actually reported.

### 2.    Debtors have Overstated Allowed Expense Deductions

The Debtors have claimed a total of all deductions allowed under § 707(b)(2) in the amount of $7,268.00.[17]   The resulting monthly disposable income under § 707(b)(2) calculated by the Debtors is less than zero ($785.34).[18]

---

[14] *See Blausey v. U.S. Trustee*, 552 F.3d 1124, 1133-34 (9th Cir. 2009).

[15] *Id.*

[16] *See* Sadovnick Declaration, ¶7.

[17] *See* U.S. Trustee's RJN, Exhibit 5, filed concurrently herewith, Debtors' Form 22A, at Line 47.

[18] *Id.* at Line 50.

7

**(a)     The Debtors have overstated/understated certain allowable expense
deductions.**

i) Line 17 for marital adjustment, Debtors claimed $3,700.67 based on his spouse's
payroll deductions.  Line 17 on the proforma Means Test prepared by the United States Trustee
reflects $0.00 as the allowable payroll deductions appear on Line 25 for payroll taxes (ie:
2,933.33), Line 27 for life insurance expense ($27.16), and Line 34 for health insurance expense
($530.66).[19]

ii) Line 20B for mortgage expense, Debtors claimed $1,807.00.  As set forth on Debtors'
Schedule J, the monthly mortgage expense appears to be $2,500.00.  Since this amount is in
excess of the locality allowance, Line 20B should be $0.00 and the $2,500.00 expense should
appear as a monthly secured debt payment on Line 42 of the Means Test.  As such, the proforma
Means Test prepared by the United States Trustee reflects $0.00 on Line 20B and $2,500 on
Line 42.[20]

iii) Line 21 for housing and utilities adjustment, Debtors claimed $700.00.  The United
States Trustee notes that Debtors failed to state the basis for their claim of an enhancement to
the housing and utilities allowance.  Based on the amount, it appears that the Debtor may have
claimed the $700.00 as the difference between the amount of his monthly secured debt payment
on his residence (ie: $2,500.00) and the allowance set forth on Line 20B (ie: $1,807.00).
However, as set forth immediately above, the entire $2,500 monthly mortgage payment in the
proforma Means Test prepared by the United States Trustee is reflected in Line 42.  Based on
the Debtors' failure to succinctly support his claim to the $700.00 enhancement, Line 21 of the
proforma Means Test prepared by the United States Trustee reflects $0.00.

iv) Lines 23 and 24 for the locality standard for vehicle ownership expense.  Debtors
claimed $496.00 on each Line.  Debtor's Schedule G reflects two vehicle leases, one for a 2009
Honda Accord and the second for a 2009 Mercedes Benz E350 Sedan.  Based on the Debtors'

---

[19]*See* Sadovnick Declaration, ¶8 and accompanying footnote thereto.  *See also* Sadovnick
Declaration, ¶¶12, 13 and 17.

[20]*See* Sadovnick Declaration, ¶9.

8

341a testimony, Debtors testified that their monthly obligation for the 2009 Mercedes Benz is $600 and for the 2009 Honda Accord, $500.00. Based on the Debtors' 341a testimony, it is expected that these lease obligations will expire within a year. For purposes of the proforma Means Test prepared by the United States Trustee, the two separate monthly lease payments of $600.00 and $500.00 are shown on Line 42 as proxies of the Debtors' monthly payments even though the two vehicle leases are scheduled to expire within a year. Lines 23 and 24 of the proforma Means Test prepared by the United States Trustee is shown as \$0.00 as the scheduled amounts on Line 42 exceeded the locality allowance per vehicle.[21]

v) Line 29 for education for employment or for a physically or mentally challenged child, Debtors claimed $225.00. The United States Trustee notes this is the same amount reflected on Debtors' amended Schedule J for 'Children Education Expenses'. In the proforma Means Test prepared by the United States Trustee, Line 29 is shown at \$0.00 and the $225.00 appears on Line 38 as the proxy for such educational expenses subject to proof by the Debtor of such monthly payments.[22]

vi) Line 31 for health care expenses in excess of amount entered on Line 19B, Debtors claimed $220.00. On Debtors' Schedule J, medical and dental expenses are listed at $300.00 per month. Line 19B is shown at $240.00. The difference between $300.00 claimed in Debtors' Schedule J for healthcare expenses and $240.00 allotted on Line 19B of $60.00 is reflected on Line 31 of the United States Trustee's proforma Means Test.[23]

vii) Line 40 for charitable deductions, Debtors claimed $200.00. Debtors have failed to date to provide support for this line item deduction, as such, for purposes of the proforma Means Test prepared by the United States Trustee, Line 40 is shown at \$0.00.[24]

---

[21]*See* Sadovnick Declaration, ¶11.

[22]*See* Sadovnick Declaration, ¶14.

[23]*See* Sadovnick Declaration, ¶15.

[24]*See* Sadovnick Declaration, ¶18.

1    vii) Line 45 for Chapter 13 administrative expenses, Debtors claimed $0.00.  The United

2    States Trustee provided for the Chapter 13 administrative expense in his proforma Means Test

3    on Line 45.[25]

4        Based on the U.S. Trustee's calculation, the Debtors are entitled to claim an "allowed

5    deductions" total under § 707(b)(2) in the amount $10,581.17.

6    **3.    A Debtor Who Attempts to Rebut the Presumption of Abuse of §707(b)(2)(B) Must**

7    **Demonstrate "Special Circumstances"**

8        If Debtors' intent is to rebut the presumption of abuse under 11 U.S.C. § 707(b)(2)(B)(I),

9    any such rebuttal can only be established by "demonstrating special circumstances to the extent

10    such special circumstances justify additional expenses or adjustments of current monthly

11    income for which there is no reasonable alternative."[26]  To demonstrate such special

12    circumstances, a debtor must itemize each additional expense or adjustment of income and

13    provide 1) documentation for such an expense or adjustment; and 2) a detailed explanation of

14    the special circumstance making the extra expenses or adjustment necessary and reasonable.[27]

15        Although Congress did not provide an exhaustive list of situations that could rise to the

16    level of "special circumstances," it did specifically state that the statutory presumption of abuse

17    could only be rebutted by "special circumstances, such as a serious medical condition or a call

18    or order to active duty in the Armed Forces."[28]

19        The fact that Congress identified examples of "special circumstances" § 707(b)(2)(B) is

20    significant.  "[U]nder the rule of *ejusdem generis*, where general words follow an enumeration

21    of specific terms, the general words are read as applying only to other items akin to those

22

23

24

---

25    [25]*See* Sadovnick Declaration, ¶21.

26    [26]*See* § 707(b)(2)(B)(I).

27    [27]*See* § 707(b)(2)(B)(I) & (ii).

28    [28]*Id.*

specifically enumerated."[29] Accordingly, only situations that are "akin" to a "serious medical condition" or "a call or order to active duty in the Armed Forces" qualify as "special circumstances" sufficient to rebut the statutory presumption of abuse.[30]

The Debtors, who bear the burden of establishing special circumstances under § 707(b)(2)(B), have not alleged a serious medical condition, a call to active duty, or similar circumstances.

**4.     Dismissal Is Justified Because The Presumption Of Abuse Arises**

In sum, after adjusting the income and/or expenses as detailed above, the Debtors actually have at least $729.43 in monthly disposable income. The amount multiplied by 60 equals $43,765.80 and exceeds $10,950.00[31], as follows:

| | | |
|---|---|---:|
| Gross Wages (Line 3) | $11,310.60 | |
| **TOTAL:** | **$11,310.60** | |

| | | | |
|---|---|---|---:|
| Less | National Standards: food/clothing (Line 19A) | ($ | 1,371.00) |
| | National Standards: health care (Line 19B) | ($ | 240.00) |
| | Local Standards: non-mortgage expense (Line 20A) | ($ | 647.00) |
| | Local Standards: vehicle operation expense (Line 22A) | ($ | 566.00) |
| | Tax Expense (Line 25) | ($ | 2,933.30) |
| | Life Insurance (Line 27) | ($ | 27.16) |
| | Childcare (Line 30) | ($ | 300.00) |
| | Health Care (Line 31) | ($ | 60.00) |
| | Health Insurance/Disability Insurance/HSA Expense (Line 34) | ($ | 530.66) |
| | Education Expenses for Dependent Children less than 18 (Line 38) | ($ | 225.00) |
| | Future Payments on Secured Claims (Line 42) | ($ | 3,600.00) |
| | Chpater 13 Administrative Expenses (Line 45) | ($ | 81.05) |

TOTAL DEDUCTIONS UNDER § 707(b)(2)          ($10,581.17)

---

[29] *Sacramento Regional County Sanitation District v. Reilly*, 905 F. 2d 1262, 1269 (9th Cir. 1990) *quoting Harrison v. PPG Industries, Inc.,* 446 U.S. 547, 588 (1980).

[30]In *In re Castle*, 362 B.R. 846 (Bankr. N.D. Ohio 2006), the bankruptcy court ruled that under the doctrine of *ejusdem generis* courts must limit "the sphere of permissible 'special circumstance'" to situations bearing "similar traits and characteristics" to the examples listed in § 707(b)(2). *Id.* at 851. The court further found that both "a serious medical condition" and "a call to active duty" share "a commonality [as] they both constitute situations normally beyond the debtor's control." *Id.*

[31]Indeed, the amount is sufficient to repay 75% of the Debtors' unsecured debt over a five year period.

MONTHLY DISPOSABLE INCOME:          $ 729.43
60-MONTH DISPOSABLE INCOME:          $43,765.80

Accordingly, the presumption of abuse arises in this case. The Court should therefore dismiss this case pursuant to § 707(b)(1), based upon the presumption of abuse that arises under § 707(b)(2).

**C.      Dismissal Pursuant to § 707(b)(3)(B) Under The Totality Of Circumstances Of The Debtors' Financial Situation Is Applicable and Demonstrates Abuse**

Alternatively, to the extent that this court is not inclined to find that the presumption of abuse arises under § 707(b)(2), this case should be dismissed as an abuse under § 707(b)(3)(B), based upon the totality of the circumstances surrounding the Debtors' financial situation, because the Debtors have the ability to repay a sufficient amount of the scheduled unsecured debt.

In pertinent part, 11 U.S.C. § 707(b)(3) provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider --
>        (A) whether the debtor filed the petition in bad faith; or
>        (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

The Ninth Circuit determined that under § 707(b)(3)(b), "[e]ven if a debtor's financial situation does not create a presumption of abuse (or if the presumption is rebutted), the bankruptcy court may still dismiss the petition if the debtor filed in bad faith or if the 'totality of the circumstances' demonstrates 'abuse' of Chapter 7."[32]  Therefore, even if the Court finds that the presumption of abuse does not arise under § 707(b)(2), the Court should find that the totality of the circumstances warrant dismissal of this case under § 707(b)(3)(B).

---

[32] *In re Egebjerg*, 574 F.3d 1045, 1048 (9th Cir. 2009).

**1.    The Standard for Finding Abuse is Lower than Finding Abuse Under the Pre-BAPCPA[33] "Substantial Abuse" Standard**

In 2005, Congress amended § 707(b) to replace and lower the standard of dismissal from "substantial abuse" to "abuse." The legislative history of earlier bankruptcy reform legislation provides that courts have additional discretion under the "abuse" standard than under the "substantial abuse" standard.[34] A case that would have been dismissed under the old "substantial abuse" standard would still be dismissed under the new "abuse" standard.[35] In addition, cases that may not have been dismissed under the old "substantial abuse" standard may now be dismissed under the new "abuse" standard. In sum, the standard for dismissing under the revised § 707(b) is less stringent.[36]

---

[33]The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which made certain modifications to the Bankruptcy Code, took effect on October 17, 2005.

[34]*See* 146 Cong. Rec. S11683-11729, Dec. 2000 (stating "since the standard is 'abuse' rather than 'substantial abuse,' the courts are clearly given additional discretion to control abusive use of chapter 7 when that is appropriate . . ."). Although this legislative history pertains to an earlier version of bankruptcy reform legislation, because the amendment to § 707(b) in the BAPCPA is substantially the same and because there is little legislative history pertaining to the BAPCPA, this section by section discussion may be helpful to the Court.

[35]*See* 146 Cong. Rec. S11683-11729, Dec. 2000 (stating "[i]f a debtor's case would be dismissed today for 'substantial abuse' as in *In re Lamanna*, 153 F. 3d 1 (1st Cir. 1998), it is intended that the case should be subject to dismissal under H.R. 2415").

[36]*In re Haney*, 2006 WL 3020961, *2, *unpublished slip copy*, (Bankr. W.D. Ky. October 19, 2006)("the standard to be shown for dismissal under the revised 11 U.S.C. § 707(b) has been lowered from substantial abuse to just simple abuse"); *In re James*, 345 B.R. 664, 667 (Bankr. N.D. Iowa 2006) ("Congress in BAPCPA reduced the test for dismissal from 'substantial abuse' to 'abuse'"); *In re Colgate*, 370 B.R. 50, 54 (Bankr. E.D.N.Y. 2007) ("BAPCPA made significant changes to this section of the Bankruptcy Code, making it easier to find that a debtor's case should be dismissed. First, in subsection (b)(1), the standard for dismissal of the case has been reduced from 'substantial abuse' to 'abuse'"). A true and accurate copy of the *Haney* decision is attached as Exhibit "9" to U.S. Trustee's RJN, filed herewith, for the Court's review and convenience.

1      **2.      The Ability to Repay Unsecured Debts is Primary Ground for Dismissal
               Under the "Abuse" Standard of § 707(b)(3)(B).**

2
            Prior to BAPCPA, a chapter 7 case could be dismissed for "substantial abuse" under

3
§ 707(b) based on the debtor's ability to repay.[37]  It therefore follows that a Chapter 7 case also

4
should be dismissed based on the debtor's ability to repay under the lower standard of "abuse,"

5
even if that ability is not presumed as a result of the means test formula.  In other words, because

6
the "abuse" standard of § 707(b)(3) expressly applies when the presumption of abuse under the

7
Means Test does <u>not</u> arise, "passing" the Means Test does not preclude a discretionary finding of

8
abuse by the court.

9
            In considering the "totality of the circumstances," a number of cases have now held that

10
debtor's actual ability to repay unsecured debts is an important factor in determining whether the

11
case is abusive.[38]

12
            Therefore, this court should consider whether the Debtors have an ability to pay as an

13
important part of the totality of the circumstances of the Debtors' financial condition, and dismiss

14
this case as "abusive" if the Debtors have the ability to repay a significant portion of the

15
unsecured debt.

16
        **3.      CMI Amounts Set Forth in § 707(b)(2) Establish Guideline Standards for
               "Ability to Pay" Under the "Totality of the Circumstances" Test Pursuant to
17             § 707(b)(3)(B)**

18
            Section 707(b)(3)(B) does not establish a minimum repayment percentage required to find

19
that the totality of circumstances demonstrate abuse.  However, the Honorable Eugene R. Wedoff

20
posits that Congress, in enacting § 707(b)(2), established a threshold amount of monthly

21

22
            [37]*See e.g. In re Price*, 353 F. 3d 1135 (9th Cir. 2004).

23
            [38]*See e.g. In re Reed*, 422 B.R. 214 (C.D. Cal. 2009) (holding that the debtor's ability to
24   repay is, by itself, sufficient to find abuse under the totality of the circumstances test under §
     707(b)(3)); *In re Ross-Tousey*, 549 F.3d 1148, 1162 (7th Cir. 2008) (stating that the court can
25   take into consideration a debtor's actual income and expenses under a totality of the
     circumstances analysis under § 707(b)(3)); *In re Baeza*, 398 B.R. 692 (Bankr. E.D. Cal. 2008)
26   (stating that a court must consider a debtor's actual financial situation under the plain meaning of
     § 707(b)(3)(B)); *In re Pak*, 343 B.R. 239, 240-44 (Bankr. N.D. Cal. 2006) (holding that the
27   debtor's actual ability to repay his nonpriority unsecured claims can be considered as part of the
28   totality of the circumstances).

14

1  disposable income that it considered to be presumptively abusive – (1) at least $100 per month

2  which is sufficient to pay 25 percent of the debtor's nonpriority unsecured debt in five years, or

3  (2) $166.66 a month.[39]  Thus, Judge Wedoff argues that courts should find abuse if the debtor's

4  monthly disposable income exceeds either of the amounts under § 707(b)(3).[40]

5        In *In re Pak*, the Northern District of California Bankruptcy Court found that even where a

6  debtor's monthly income was below the applicable median income, the court should review the

7  debtor's ability to repay his debts under the totality of the circumstances prong of

8  § 707(b)(3)(B).[41]  In doing so, the court considered actual and anticipated future income of the

9  debtor.[42]  After reviewing the debtor's actual monthly expenses and projected monthly disposable

10  income, the court concluded that the debtor had the ability to repay 19% of his unsecured debt.[43]

11  In concluding that it would be abusive to grant relief when the debtor could repay 19% of his

---

12

13  [39]Eugene R. Wedoff, *Judicial Discretion to Find Abuse Under § 707(b)(3)*, 25 APR
Am.Bankr.Inst.J. 1, 52 (April 2006).  The monthly figures are derived by dividing $6,000 and
14  $10,000 by 60 months, as set forth in 11 U.S.C. § 707(b)(2)(A).

15  [40]*Id.*  He states:
Disposable income of more than $166.66 per month, or disposable income of at least
16  $100 per month, sufficient to pay 25 percent of the debtor's non-priority unsecured debt
in five years, is always an abuse requiring a denial of chapter 7 relief. Since the abuse
17  threshold cannot be challenged within the means test, there is a clear policy judgment that
the threshold fixes the level at which debt-paying ability becomes abusive of chapter 7.
18  When judges are required to make determination of abuse under § 707(b)(3), they should
accordingly use the means-test threshold: If a debtor's actual disposable income,
19  determined by the court, is below that threshold, there should be no finding of abuse
based on debt-paying ability; if disposable income meets or exceeds the threshold, abuse
20  should be found.
21

22        However, as Judge Wedoff explains: "[t]he means test . . . does not replace judicial
assessment of disposable income.  Rather, it sets out a rule for determining disposable income
23  that is only presumptively applicable."  ("[T]he means test serves to guide, rather than foreclose
24  . . . determinations of abuse").

25        [41]*In re Pak*, 343 B.R.239, 241-44 (Bankr. N.D. Cal. 2006).

26        [42]*Pak*, 343 B.R. at 245-46; *see also In re Maya*, 374 B.R. 750, 754 (Bankr. S.D. Cal.
2007) (stating that post-petition events or circumstances should be considered under a §
27  707(b)(3)(B) analysis).

28        [43]*Pak*, 343 B.R. at 246.

1   unsecured debts to creditors, the court noted that (1) the standard is "abuse" not "substantial

2   abuse," (2) the actual amount of repayment, $33,497.28, was still a large amount, and (3) some of

3   the debtor's expenses were excessive.[44]

4       Relying on Judge Wedoff's analysis, other courts have  held that the "abuse threshold"

5   contained in § 707(b)(2)(A) is helpful to determine whether a case should be dismissed for abuse

6   under § 707(b)(3)(B). In *In re Mestemaker*, 359 B.R. 849 (Bankr. N.D. Ohio 2007), the

7   bankruptcy court granted the U.S. Trustee's motion to dismiss under § 707(b)(3) where the

8   debtor's ability to pay exceeded the abuse threshold contained in § 707(b)(2)(A)(I).[45]  Similarly, in

9   *In re Pennington*, 348 B.R. 647 (Bankr. D. Del. 2006), the bankruptcy court held that granting

10  chapter 7 relief would constitute an abuse where the debtor could repay 42% of his unsecured debt

11  in a three-year plan and 69% of his unsecured debt in a five-year plan, which is significantly

12  above the 25% threshold for presumption of abuse.[46]  Finally, in *In re Mondragon*, 2007 WL

13  2461616 (Bankr. D.N.M. Aug. 24, 2007), the court held that "a debtor's ability to repay 25% or

14  more of his or her unsecured non-priority debts is persuasive evidence that allowing the debtor to

15  proceed under Chapter 7 would constitute an abuse."[47]  In other words, the *Mestemaker,*

16  *Pennington* and *Mondragon* courts have determined that it would be an abuse to grant relief in a

17  Chapter 7 case when the debtor's ability to repay exceeds a 25% threshold where abuse is

18  presumed.[48]

19      In reviewing the "totality of the circumstances . . . of the debtor's financial situation," the

20  court should consider the Debtors' ability to pay.  In determining when the Debtors' ability to pay

21  demonstrates abuse, the court should find abuse if the Debtors' ability to pay rises above the

---

22

23      [44]*Id.*

24      [45]*Mestemaker*, 359 B.R. at 858.

25      [46]*Pennington*, 348 B.R. at 651-52.

26      [47] *In re Mondragon*, 2007 WL 2461616, at *6 (Bankr. D.N.M. Aug. 24, 2007).  A true
    and accurate copy of the *Mondragon* decision is attached as Exhibit "10" to the U.S. Trustee's
27  RJN, filed herewith, for the Court's review and convenience.

28      [48]*Id.*

16

1  presumptively abusive level set by Congress in § 707(b)(2) of $167 per monthly disposable

2  income or at least $100 per monthly disposable income that can pay at least 25% of the Debtors'

3  nonpriority unsecured debt in five years.  Furthermore,  even if the Debtors' ability to repay their

4  unsecured debts may seem low in percentage, the court should consider all other factors, such as

5  the actual amount of repayment and the necessity of expenses.

6  **4.    The Debtors have the Ability to Repay Unsecured Debt and the Court Should Dismiss this Case as Abusive**

7

8  In this case, dismissal is warranted under § 707(b)(3)(B) because the record shows that the
Debtors can repay a sufficient portion of the scheduled unsecured debt.

9  **(a)    The Debtors' Schedules Show that the Debtors have the Ability to Repay the Scheduled Unsecured Debts.**

10

11  Similarly, based on a review of the Debtors' Schedules I and J, the Debtors have the ability

12  to repay his creditors under § 707(b)(3)(B).

13  In determining the amount of disposable income that a debtor would have available to

14  repay a sufficient amount to creditors under § 707(b), the Court is not bound by the debtor's

15  actual expenses.  The Court may correctly reduce the expenses to those reasonable for necessities

16  and then forecast a repayment plan based on the reduced expenses.[49]  While "reasonably necessary

17  expenses" are determined on a "case by case basis," courts have generally ruled that "reasonable"

18

19

20

---

21  [49]*See In re MacNamara*, 2009 WL 1606985, at *3 (Bankr. M.D. Pa. June 5, 2009)

22  (dismissing the debtors' case under § 707(b)(3)(B) after eliminating unnecessary expenses such
as the automobile insurance premiums, cellular phone bills for the debtors' adult children, and

23  the premiums for life insurance policies); *In re Hoffman,* 413 B.R. 191, 195 (Bankr. M.D. Pa.
2008) (dismissing the debtor's Chapter 7 case after finding that the debtor's monthly housing

24  expense was excessive and unreasonable); *In re Ricci,* 2009 WL 3381517 (Bankr. M.D. Fla.

25  Sept. 2, 2009) ("The payout to unsecured creditors would increase dramatically if the Debtors'
budget included only reasonable and necessary expenses"); *In re Durczynski,* 450 B.R. 880, 885

26  (Bankr. N. D. Ohio 2009) (dismissing the debtors' case under § 707(b)(3)(B) after finding that
the debtors could do some "belt tightening" by moving from a home that consumed 40% of their

27  income or reducing the alleged monthly food expense of $1,150).  True and accurate copies of
the *MacNamara* and *Ricci* decisions are attached as Exhibits "11" and "12" to the U.S. Trustee's

28  RJN, filed herewith, for the Court's review and convenience.

1  amounts are permissible for "essential" expenses such as food, clothing, shelter, utilities and other
2  necessities.[50]

3      The United States Trustee contends that Debtors have understated their household income
4  for purposes of the totality of the circumstances test and that based on the same calculation used
5  to determine household income under the Means Test, that the Debtors' Average Monthly Income
6  is $7,819.48 as opposed to $6,482.00 as reflected in Debtors' amended Schedule I. The United
7  States Trustee objects to the deduction for the 401k deduction, the group legal deduction and
8  various miscellaneous payroll deductions as being neither reasonable nor necessary.

9      Even without any adjustments to claimed expenses in Debtors' Schedule J expenses of
10 $6,905.00, the Debtors would have $914.48 in monthly disposable income, an amount sufficient
11 to fund repayment of almost Debtors' entire unsecured debt of $58,088.00 in five years.

12     The United States Trustee further notes his objection to Debtors' claimed expense
13 deductions on Debtors' Schedule J for charitable contributions of $200.00 as Debtors have failed
14 to provide any documentation in support of such monthly contribution as well as the $110.00 in
15 monthly recreational expense as such is a discretionary expense. Moreover, the United States
16 Trustee notes that Debtors' lease obligation for his vehicles will terminate within a year and
17 contends that any substitute vehicle ownership/lease expense be no more than the locality
18 allowance set forth on the Means Test of $496.00. The United States Trustee notes that any one
19 of the reductions above would create sufficient funds in addition to the $914.48 in monthly

20

21      [50]*See Ricci*, 2009 WL 3381517, at * 16 ("A budget is unreasonable where a debtor's
22 expenditures manifest a desire to maintain a standard of living which precipitated the bankruptcy
   filing"); *Hoffman*, 413 B.R. at 195 (considered "whether the debtor's expenses can be reduced
23 significantly without depriving him of adequate food, clothing, shelter and other necessities" in
   determining the debtor's ability to repay); *MacNamara*, 2009 WL 1606985, at *2-3; *In re*
24 *Gillead*, 171 B.R. 886, 891-92 (Bankr. E.D. Cal. 1994) (holding that the debtors' expenses
   related to cable television, work lunches, entertainment, periodicals, spring water, and a health
25 club membership were discretionary and not necessary); *In re Attanasio*, 218 B.R. 180, 210 fn.
26 30 (Bankr. N.D. Ala. 1998); *In re Kelly*, 841 F.2d 908 (9th Cir. 1988) (stating that expenses for
   going out to dinner, entertaining, buying toys for the children or going to the movies were not
27 reasonably necessary for the support of a debtor or a dependent of the debtor). Although *Kelly*
   was a pre-BAPCPA "substantial abuse" case, it indicates what expenses the Ninth Circuit would
28 consider excessive under that higher standard.

18

1  disposable income calculated above to fund repayment in full over a five year period.  Any tax

2  refund received by the Debtors would augment the return to creditors.

3  **(b)  Dismissal of the Debtors' Case  is Warranted Under §707(b)(3)(B).**

4  For the reasons set forth above, and without adjusting any of the Debtors' present

5  expenses, the U.S. Trustee has demonstrated that Debtors have the ability to repay a substantial

6  portion of their debt over a five year period because Debtors have approximately $914.48 in

7  disposable monthly income available under the totality of the circumstances analysis.

8  Accordingly, it would be an abuse of chapter 7 to discharge the Debtors' debts when they clearly

9  have the ability to repay a sufficient amount to their creditors.

10  **V.  IN THE ALTERNATIVE, IF A MOTION TO DISMISS PURSUANT TO §707(b)
(2) OR (3) IS NOT GRANTED, THE U.S. TRUSTEE REQUESTS AN ORDER

11  EXTENDING THE BAR DATE FOR THE FILING OF A COMPLAINT FOR THE
DENIAL OF DISCHARGE UNDER §727**

12
Federal Rules of Bankruptcy Procedure 4004(a) and 1017(e)(1) control the time frames for

13  the filing of a complaint under § 727 of the Bankruptcy Code.  These Rules provide in a Chapter 7

14  case that such a complaint shall be filed no later than sixty (60) days following the first date set

15  for the § 341(a) Meeting of Creditors.  Pursuant to FRBP 4004(b) and 1017(e)(1), this Court may

16  extend the bar date for filing complaints objecting to the debtors' discharge if the motion to

17  extend time is filed before the 60-day time period has expired.

18
As reflected on the Debtors' bankruptcy petition, the first date set for the § 341(a) Meeting

19  of Creditors was January 24, 2011, and thus the deadline for filing a complaint under § 727 or a

20  motion to extend the bar date is March 25, 2011.  Thus, this motion is timely filed.

21
The U.S. Trustee is currently and has been diligently investigating this matter regarding

22  potential violations of Bankruptcy Code § 707(b)(2) and (3), and §727.  The U.S. Trustee's

23  analysis of the case to date has led to the conclusion that a motion under § 707(b)(2) and (3) is the

24  appropriate action to take with respect to the Debtors' abusive chapter 7 filing.  However, in the

25  event that the underlying case is not dismissed as requested herein, as alternative relief the U.S.

26  Trustee further requests that the Court extend the bar date for filing a § 727 complaint to deny the

27  debtor's discharge, by approximately ninety (90) days, up to and including June 24, 2011, to

28

1  provide the U.S. Trustee with the opportunity to complete his pending investigation, including

2  formal discovery and a Rule 2004 examination, to obtain additional testimony and/or other

3  evidence produced by the Debtor or other parties in interest.

4  **VI.    CONCLUSION**

5       WHEREFORE, the United States Trustee prays that, pursuant to § 707(b)(1), the Court

6  dismiss this case and for such other and further relief as is just.

7  DATED: **March 2, 2011**                              Respectfully submitted,

8                                                        PETER C. ANDERSON
                                                         UNITED STATES TRUSTEE
9

10
                                                         By:    ALVIN MAR
11                                                              Attorney for the United States Trustee

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF
# WENDY C SADOVNICK

# DECLARATION OF
# WENDY C SADOVNICK

1

## DECLARATION OF WENDY CAROLE SADOVNICK

2       I, Wendy Carole Sadovnick, hereby declare as follows:

3       1.      I am over the age of eighteen years, and if called upon to testify I could and would
4   do so competently.  I am employed as a Bankruptcy Analyst by the Office of the United States
5   Trustee for the Central District of California, in the Los Angeles Field Office.  I have been so
6   employed since January 1985.  I am the Analyst assigned to ***In Re Armando Francico Delgado***
7   ***Jr and Cheryl Delgado***, 'Debtors', Case No. 2:10-bk-63810-BB. .    I have personal knowledge of
8   the facts set forth herein, and based on that personal knowledge I assert that all such facts are true
9   and correct to the best of my knowledge.  To the extent I rely on other admissible evidence rather
10  than on personal knowledge, I will so state.

11      2.      The Debtors filed a  voluntary joint petition with his spouse on December 17,
12  2010as well as Schedules and Statements, including a Statement of CMI in which the Debtors
13  checked that the presumption arose. On December 22, 2010 the Debtors filed an amended
14  Voluntary Petition, which removed his spouse's name. On December 28, 2010 the Debtors filed
15  an Amended Certification of Employment. On January 10, 2011, Armando Francico Delgado, Jr.
16  'Debtor' filed another  Voluntary Petition, Amended  Schedules, Statement of Affairs, Amended
17  Statement of CMI and2nd Amended Certification of Employment. On January 24, 2010 the
18  Debtor filed yet another amendment to the Voluntary Petition, Amended Schedules "A", "B","C",
19  "D","G","I","J" and Summary of Schedules. The UST has requested that the Court take judicial
20  notice of all such documents. [51]  As can be established by a review of the Court's files, the §341(a)
21  meeting was initially set by the court for January 24, 2011 and the Debtor did appear. The UST
22  appeared and also questioned the Debtor.  The meeting was continued to February 24, 2011 at
23  2:30. The court docket  indicates that the deadline to file a complaint is March 25,  2011. See
24  Exhibit "1" - A true and correct copy of the Debtor's current PACER docket obtained on March 1,
25  2011.

26

27

28       [51] Please refer to the UST's Request for Judicial Notice filed concurrently with this
    Motion to Dismiss and this Declaration.

1   3.   On behalf of the UST, I reviewed the Debtors' Petition, Schedules, Means Test

2 Documents and Statements and amendments. As part of my analysis, I personally filled out the

3 full Means Test form using the figures and information obtained from the documentation and

4 pleadings provided by or filed on behalf of the Debtor. At the conclusion of my review, and based

5 upon the results of my factual analysis, the UST caused to be filed on February 3, 2011 a

6 Statement of Presumed Abuse.

7   4.   The UST's grounds for filing the Statement of Statement of Presumed Abuse are

8 detailed in paragraphs 5 through 23 below. See Exhibit "2" A true and correct copy of the UST's

9 more accurate version of the Form B22A Statement of Current Monthly Income and Means Test

10 Calculation ("UST Means Test").

11   5.   According to the Debtor's own 2nd amended Means Test, his monthly income

12 (which includes his non filing spouse) is $10,183.33 and annualized CMI is $122,199.96. The

13 applicable state median income for a household of four people, is $77,596.00. Accordingly,

14 Debtor's CMI significantly exceeds the applicable state median income amount. See RJN -

15 Debtor's amended Means Test, lines 12-13.

16   6.   An inquiry letter via U.S. Postal Service and facsimile was sent on January 11,

17 2011 to Mr. Lux, Debtor's attorney, requesting certain documents and clarification on some

18 items. Mr. Lux has not provided any documents or a response to the UST's inquiry letter. The

19 UST sent Mr. Lux an email on January 27, 2011. The UST again requested a response pursuant to

20 our previous letter. Also, the Mr. Lux was informed that the amended Means Test of 1/24/11 had

21 many material errors, and that the Amended Schedule "I" also seemed at odds with the Debtor's

22 testimony at his 341(a) meeting on January 24, 2011. Mr Lux faxed a reply indicating that he

23 would contact me as soon as possible. To date, I have not been contacted by Mr. Lux. See Exhibit

24 "3" - A true and correct Copy of my Inquiry Letter of January 11, 2011 and email to Mr. Lux

25 dated January 27, 2011. See Exhibit "4" - A true and correct copy of the Mr. Lux's email

26 response dated 1/27/11.[52]

27

28   [52] All the exhibits accompanying the responses by the Debtors have not been attached to
this motion because of privacy issues and the voluminous nature of the documents. However, the

1       7.    At Line 3 of his 2nd amended Means Test, gross wages, Mr. Delgado indicates that

2 his non filing spouse has monthly income of $10,183.33, while the Debtor discloses no income

3 for himself on Line 3 and on Line 4 discloses no income from his business. However, as

4 demonstrated by the parallel entry on the U.S. Trustee Means Test, Mrs. Delgado should have

5 claimed $11,310.60 for her salary. Currently it cannot be determined by the UST what income if

6 any Mr. Delgado earned from his business. [53]

7

8

9

10 ──────────────

11 UST has included some documents and they have been identified within the body of this motion.

12      [53]The Debtor had filed his Certification of Income on 12/28/10 which included profit and
loss statements from June thru November 2010 and two pay advices for his non filing spouse.

13 The Debtor filed an amended Certification of Income on January 10, 2011 which included
amended profit and loss statements from June thru November 2010. At the 341(a) meeting of

14 January 24, 2011, the Debtor testified that he solely operated his Investigation business

15 performing background checks out of his home. The Debtor testified that the time he spent
picking up his two minor children from school every day, feeding them, and doing homework

16 with them prevented him from doing more business. The Debtor at the January 24, 2011 creditors

17 meeting was asked to provide documentation for his expenses disclosed on his profit and loss
statements that were attached to his amended Certification of Income filed January 10, 2010. To

18 date nothing has been submitted. The UST has not been able to verify his expenses associated
with his business. Debtor's amended Means Test indicates that he is not earning any money

19 from the operation of his business.

20
The pay advice for Debtor's non filing spouse for the period ending October 31, 2010 indicated

21 her YTD income and deductions from payroll. The UST divided these categories by 10 to get a
monthly figure to be used on its Means Test and Schedule "I" and "J" analysis. The monthly

22 figures are as follows: Gross income $11,310.60 - Taxes $2,933.30 - Medical $508.15
LTD $22.51 - Life Ins. $27.16 - 401K $1,357.24 . Under the direction of UST attorney Mar the

23 following deductions totaling $8.29 per month under the acronyms of PAI, H & W and STK DIV

24 were omitted as the UST was not sure what they were. Also, Mr. Mar directed me to omit from
the UST Means Test the monthly legal deductions of $15.09. See Exhibit "5" - A true and

25 correct copy of the pay advice for the period ending October 31, 2010 for the non filing spouse.
See U.S. Trustee's RJN, Exhibits 7 and 8 - Certificate of Income filed December 28, 2010, and

26 Amended Certificate of Income filed January 10, 2011. The inclusion of these deductions would

27 not affect the presumption of abuse.

28                                 23

8.     At Lines 12, 16,  the Debtor claimed  $10,183.33 as total current monthly income and on Line 18 claimed $6,482.66.  However, as demonstrated by the parallel entry on the UST Means Test, the Debtor should have claimed $11,310.60 at Lines 12, 16 and 18. [54]

9      At Line 20B his  2nd amended Means Test, the Debtor indicated a net mortgage expense of $1,800.00.  However, as demonstrated by the parallel entry on the UST Means Test, the Debtor should have claimed $0.00. [55]

10.     At Line 21 housing and utilities adjustment, the Debtor indicated $700.  However, as demonstrated by the parallel entry on the UST Means Test,  the Debtor should have claimed $0.00. I was instructed by Mr. Mar to omit this expense.

11.     At Lines 23 and 24 Local Standards: transportation/ownership expense, the Debtor claimed $496 for each Line.  However, as demonstrated by the parallel entry on the UST Means Test,  the Debtor should have claimed $0.00 for each Line. [56]

12.     At Line 25 of his  2nd amended Means Test, the Debtor claimed $0.00 payroll taxes. However, as demonstrated by the parallel entry on the UST Means Test,  the Debtors should have claimed $2,933.30. [57]

---

[54]Refer to paragraph 7 *ibid.* and its accompanying footnote for an explanation of the income. The Debtor's amended Means Test included a marital adjustment of $3,700.67 on Line 17 which reduced his current monthly income on Line 18 to $6,482.66. I was instructed by Mr. Mar. To omit this entry on the UST's Means Test.

[55]The Debtor testified at the 341(a) meeting on January 24, 2011, that his mortgage payment was $2,500 per month which is also the amount shown in Debtors' Schedule J. Therefore $1,807 minus $2,500 results in a zero as an amount an a figure less than zero cannot be entered.

[56] The Debtor testified at the 341(a) of January 24, 2011 that he and his non filing spouse were leasing a 2009 Mercedes Benz for $600 and a 2009 Honda Accord for $500 per month and that the leases would terminate in 6 months for the Mercedes and 8 months for the Honda. Since the monthly payments are over $496, Lines 23 and 24 would show zero.

[57]Please see paragraph 7 *ibid.* and its accompanying footnotes in regard to the taxes. The UST used in this category the  payroll tax information from the non filing spouse only. Although the UST does not have any information as to what tax obligation  if any the Debtor may have

24

1    13.    At Line 27 of his 2nd amended Means Test, the Debtor claimed $0.00 for life

2  insurance deductions. However, as demonstrated by the parallel entry on the UST Means Test,

3  the Debtor should have claimed  $27.16. [58]

4    14.    At Line 29 of his 2nd amended Means Test, the Debtor claimed $225.00 for

5  Education for employment or for a physically challenged child.  This is the same amount reflected

6  on Debtors' amended Schedule J for 'Children Education Expenses'.  In the proforma Means Test

7  prepared by the United States Trustee, Line 29 is shown at $0.00 and the $225.00 appears on Line

8  38 as the proxy for such educational expenses subject to proof by the Debtor of such monthly

9  payments. [59]

10    15.  At Line 30 the Debtor claimed $300 for childcare expenses. Although the UST also

11  used this expense on its Means Test, the UST does not have any documentation and reserves the

12  right to omit this expense if the Debtor does not provide documentation. The Debtor testified at

13  the 341(a) of January 24, 2011 that he works at home, he picks up his children from school every

14  day, does homework with them, and feeds them.  In addition on Line 31 for health care expenses

15  in excess of amount entered on Line 19B, Debtor claimed $220.00.  On Debtor's Schedule J,

16  medical and dental expenses are listed at $300.00 per month. Line 19B is shown at $240.00. The

17  difference between $300.00 claimed in Debtor's Schedule J for healthcare expenses and $240.00

18

19    incurred during 2010, in 2009 the Debtor and his non filing spouse received a combined Federal

20    and State tax refund of $10,239.00. The Debtor's 2009 return has not been included as an exhibit
     because of privacy issues, but will be provided to the Court for *in camera* upon request.  See

21    attached Exhibit "5" - A true and correct copy of the pay advice for the period ending October

22    31, 2010 for the spouse.

23

24    [58]Please see paragraph 7 *ibid.* and its accompanying footnotes in regard to the Life
     Insurance.  See Exhibit "5" - Pay advice for the period ending October 31, 2010 for the non

25    filing spouse.

26    [59]The Debtor did not provide any documentation of this expense nor does his profit and

27    loss statements  indicate any education  expenses.

28    25

1  allotted on Line 19B of $60.00 is reflected on Line 31 of the United States Trustee's proforma

2  Means Test

3      16. At Line 33 of his 2nd amended Means Test, Debtor claimed $7,068.00 for total

4  expenses allowed. However, as demonstrated by the parallel entry on the UST Means Test, the

5  Debtor should have claimed $6,144.46 for total expenses allowed.

6      17. At Line 34 health insurance, and disability insurance etal, Debtor claimed $0.00.

7  However, as demonstrated by the parallel entry on my UST Means Test, the Debtor should have

8  claimed $508.15 for Health insurance and $22.51 for Disability insurance totaling $530.66.[60]

9      18. At Line 40 charitable deductions, the Debtor claimed $200.00. However, as

10  demonstrated by the parallel entry on the UST Means Test, the Debtor should have claimed

11  $0.00.[61]

12      19. At Line 41 of his 2nd amended Means Test, Debtor claimed $200.00 for total

13  additional expenses allowed. However, as demonstrated by the parallel entry on the UST Means

14  Test, the Debtor should have claimed $755.66 total additional expenses allowed.

15      20. At Line 42 of his 2nd amended Means Test, Debtor claimed $0.00 for Future

16  payments on secured claims. However, as demonstrated by the parallel entry on the UST Means

17  Test, the Debtor should have claimed $3,600.00 [62]

18      21. At Line 45 of his amended Means Test, Debtor claimed $0. However, as

19  demonstrated by the parallel entry on the UST Means Test, the Debtor should have claimed

20  $810.48 at Line 45(a), 0.10 at Line 45(b) and $81.05 as the Administrative chapter 13 expense.

21

22      [60]Please see paragraph 7 *ibid.* and its accompanying footnotes in regard to the taxes. See
Exhibit "5" - Pay advice for the period ending October 31, 2010 for the non filing spouse.

23

24      [61]The Debtor has not provided documentation for this expense.

25

26      [62]According to the Debtor's amended Summary of Schedules, Schedule "J", his house
notes total $2,500.00. Debtor also testified to the same at the 341(a) on January 24, 2011.

27

28                                      26

22.   At Line 46 of his 2nd amended Means Test, the Debtor claimed $0.00 as the total deductions for Debt payment. allowed. However, as demonstrated by the parallel entry on the UST Means Test, the Debtor should have claimed $3,681.05.

23.   At Line 47 of his 2nd amended Means Test, the Debtor claimed $7,268.00 as the total deductions allowed. However, as demonstrated by the parallel entry on the UST Means Test, the Debtor should have claimed $10,581.17.

24.   Therefore, as demonstrated by the UST Means Test, instead of the Debtors' calculated total deductions of $7,268.00 (Lines 47 and 49 of Debtor's 2nd amended Means Test), the actual amount of all allowed deductions under §707(b)(2) is $10,581.17. The aggregate impact of these corrections is that the Debtor's monthly disposable income is $729.43. Debtor can repay $43,765.80 of his debt over a sixty-month period (Schedule F debt is $58,088.00).

25.   In addition to the inaccuracies I noted in the Debtor's 2nd amended Means Test, there are also a number of inaccurate entries on the Debtor's Schedule "I" and Schedule "J" which, when adjusted, reflect that the Debtor would also have the ability to repay his creditors under a totality of the circumstances theory. These adjustments are set forth in detail in paragraphs 26 through 30 below.

26.   Debtor's 2nd amended Schedule "I" indicates a combined monthly gross income of $10,183.33 (Debtor shows no income for himself, just his non filing spouse). The Debtor discloses net income of $6,482.66. Amended Schedule "J" indicates expenditures of $6,905.00 which produces a negative monthly net income of ($422.34). See RJN - Amended Schedule "I" and Schedule "J".

| | |
|---|---|
| **Total Monthly Net Income** | **$6,482.00** |
| **Total Monthly Expenditures** | **-$6,905.00** |
| **Monthly Negative Net Income** | **($422.34)** |

27

1    27.    The Debtor's 2nd amended Schedule "I" monthly net can be increased  from

2  $6,482.66  to $7,819.48 by calculating the following: [63]

3
| Gross Income | $11,310.60 |
| --- | --- |
| Payroll Taxes | - 2,933.30 |
| Medical | -   508.15 |
| Disability | -     22.51 |
| Life Insurance | -     27.16 |
| 401K | -       0.00 |
| Misc | -       0.00 |
| Legal Ins. | -       0.00 |
| Adjusted  Net  Income | $7,819.48 |

8    28.    The UST suggests that  the following amended Schedule "J" expenses can be

9  adjusted:    From                         To

Charitable Contributions  $200.00       $0.00 [64]

Recreation $110                    $0 [65]

12    29.    The adjustments to amended Schedule "J" decrease Debtor's total monthly expenses

13  to $6,595.00 ($6,905 - 310.00 = $6,595.00).

---

[63]For the Schedule "I" and "J" analysis, the UST is using the same figures mentioned in paragraph 3 *ibid.* and its accompanying footnotes. The Debtor indicates on amended Schedule "I" that  no income was generated from his business at the time of filing. At the 341(a) on January 24, 2011the Debtor testified that his business is still active and that he had just billed clients about $3,500.00.  Debtor conducts background checks, working at home.  Since the Debtor has not provided bank statements for his business, the UST cannot ascertain what income if any the estate had received from the Debtor's business at the time of filing. See Exhibit "5" - Pay advice for the period ending October 31, 2010 for the non filing spouse.

401k   - I was instructed by UST attorney Mar to place a 0.00 for this category.

Misc. - This category included deductions totaling $8.29 per month under the acronyms of PAI, H & W and STK DIV. The UST was not sure what they were and so they were omitted under the direction of Alvin Mar UST attorney.  Also, Mr. Mar also directed me to omit the monthly legal deductions of $15.09.   These amounts, in aggregate, would not materially affect Debtor's ability to repay his creditors if included.


[64]The Debtor has not provided documentation of this expense.


[65]This is a discretionary expense.

28                                  28

1    30.    The adjustments to Debtor's amended Schedules "I" and "J" increase the Debtors'

2  Schedule "J" net disposable income from ($422.34) to $811.11.

3          **Adjusted Net Income**              **$7,819.48**
          **Adjusted Monthly Expenses**     **- 6,595.00**
4          **Adjusted Monthly Net**            **$1,224.48**

5    31.    Based upon the U.S. Trustees findings, the Debtor has the potential  to repay 100%

6  of his $58,088.00 amended Schedule "F" debt over a five year period.

7    32.    The UST reserves its right to adjust the following amended Schedule J expenses  at a

8  later date if warranted:    Cable/Internet $120, Auto Insurance $230 , Childcare $300

9    33.    The Debtor  testified at the 341(a) of January 24, 2011 that the car leases on the

10  2009 Mercedes and 2009 Honda will expire in 6 to 8 months.

11          I declare under penalty of perjury that the foregoing facts are known by me to be

12       true and correct and are based upon my personal knowledge.

13       Executed on March  2   , 2011 in Los Angeles, California

14                    _Wendy Carole Sadovnick_

15                    Wendy Carole Sadovnick

16

17

18

19

20

21

22

23

24

25

26

27

28                    29

# EXHIBIT 1

# EXHIBIT 1

**707(b)**

# U.S. Bankruptcy Court
## Central District Of California (Los Angeles)
## Bankruptcy Petition #: 2:10-bk-63810-BB

*Date filed:* 12/17/2010

*Assigned to:* Sheri Bluebond
Chapter 7
Voluntary
No asset

*Debtor*
**Armando Francico Delgado, Jr.**
234 Andre St
Monrovia, CA 91016
SSN / ITIN: xxx-xx-2765

represented by **Carl A Lux**
Carl Lux
2135 Santa Anita Ave
Altadena, CA 91001
888-882-5610
Fax : 888-730-8950
Email:
carlandrewlux@gmail.com

*Trustee*
**Richard K Diamond (TR)**
Danning, Gill, Diamond & Kollitz
2029 Century Park East, 3rd Floor
Los Angeles, CA 90067-2904
(310) 201-2482

*U.S. Trustee*
**United States Trustee (LA)**
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017

| Filing Date | # | Docket Text |
|---|---|---|
| 12/17/2010 | 1 | Chapter 7 Voluntary Petition . Fee Amount $299 Filed by Armando Francico Delgado Jr. (Lux, Carl) CORRECTION: Deficient for Debtor Certificate of Employment Income (unmark boxes for Armando Delgado Jr.) due 1/3/2011. Incomplete filing due 1/3/2011. Addendum to Voluntary Petition for correction to remove joint Debtor Cherly Delgado. due 1/3/2011. Modified on 12/21/2010 (Goins, Terry). (Entered: 12/17/2010) |
| 12/17/2010 | | Receipt of Voluntary Petition (Chapter 7)(2:10-bk-63810) [misc,volp7] ( 299.00) Filing Fee. Receipt number 17869429. Fee amount 299.00. (U.S. Treasury) (Entered: 12/17/2010) |

| 12/17/2010 | 6 | Meeting of Creditors with 341(a) meeting to be held on 01/24/2011 at 11:00 AM at RM 103, 725 S Figueroa St, Los Angeles, CA 90017. Objections for Discharge due by 03/25/2011. (Lux, Carl) (Entered: 12/17/2010) |
|---|---|---|
| 12/17/2010 | 2 | Certificate of Credit Counseling Filed by Debtor Armando Francico Delgado Jr.. (Lux, Carl) (Entered: 12/17/2010) |
| 12/17/2010 | 3 | Debtor's Certification of Employment Income Filed by Debtor Armando Francico Delgado Jr.. (Lux, Carl) (Entered: 12/17/2010) |
| 12/21/2010 | 4 | Statement of Social Security Number(s) Form B21 Filed by Debtor Armando Francico Delgado Jr.. (Lux, Carl) (Entered: 12/21/2010) |
| 12/21/2010 | 5 | Declaration Re: Electronic Filing Filed by Debtor Armando Francico Delgado Jr.. (Lux, Carl) (Entered: 12/21/2010) |
| 12/21/2010 | 7 | Notice of Requirement to Complete Course in Financial Management (BNC) . (Goins, Terry) (Entered: 12/21/2010) |
| 12/21/2010 | 8 | Case Commencement Deficiency Notice to include Debtor Certificate of Employment Income (unmark boxes for Armando Delgado Jr.) , Addendum to Voluntary Petition for correction to remove joint Debtor Cherly Delgado.(BNC) (RE: related document(s) 1 Voluntary Petition (Chapter 7) filed by Debtor Armando Francico Delgado) (Goins, Terry) (Entered: 12/21/2010) |
| 12/22/2010 | 9 | Addendum to voluntary petition Filed by Debtor Armando Francico Delgado Jr.. (Lux, Carl) (Entered: 12/22/2010) |
| 12/23/2010 | 10 | BNC Certificate of Notice (RE: related document(s) 6 Meeting (Chapter 7)) No. of Notices: 7. Service Date 12/23/2010. (Admin.) (Entered: 12/23/2010) |
| 12/23/2010 | 11 | BNC Certificate of Notice (RE: related document(s) 8 Case Commencement Deficiency Notice (BNC)) No. of Notices: 1. Service Date 12/23/2010. (Admin.) (Entered: 12/23/2010) |
| 12/23/2010 | 12 | BNC Certificate of Notice (RE: related document(s) 7 Notice of Requirement to Complete Course in Financial Management (BNC)) No. of Notices: 1. Service Date 12/23/2010. (Admin.) (Entered: 12/23/2010) |
| | | Debtor's Certification of Employment Income *Amended* Filed by Debtor Armando Francico Delgado Jr. (RE: related document(s) |

| 12/28/2010 | 13 | 1 Voluntary Petition (Chapter 7)). (Lux, Carl) (Entered: 12/28/2010) |
|---|---|---|
| 12/30/2010 | 14 | Request for courtesy Notice of Electronic Filing (NEF) Filed by Christopher M McDermott on behalf of Courtesy NEF. (McDermott, Christopher) (Entered: 12/30/2010) |
| 01/10/2011 | 15 | Addendum to voluntary petition Filed by Debtor Armando Francico Delgado Jr.. (Lux, Carl) (Entered: 01/10/2011) |
| 01/10/2011 | 16 | Debtor's Certification of Employment Income *Amended* Filed by Debtor Armando Francico Delgado Jr.. (Lux, Carl) (Entered: 01/10/2011) |
| 01/20/2011 | 17 | Request for courtesy Notice of Electronic Filing (NEF) Filed by Jennifer H Wang on behalf of Courtesy NEF. (Wang, Jennifer) (Entered: 01/20/2011) |
| 01/24/2011 | 18 | Addendum to voluntary petition Filed by Debtor Armando Francico Delgado Jr.. (Lux, Carl) (Entered: 01/24/2011) |
| 01/24/2011 | 19 | Declaration concerning debtor's schedules , Amended Schedule A , Amended Schedule B , Amended Schedule C , Schedule G , Amended Schedule I , Amended Schedule J , Summary of Schedules Filed by Debtor Armando Francico Delgado Jr.. (Lux, Carl) (Entered: 01/24/2011) |
| 01/24/2011 | 20 | Chapter 7 Statement of Current Monthly Income and Means Test Calculation - Form 22A *Amended* Filed by Debtor Armando Francico Delgado Jr.. (Lux, Carl) (Entered: 01/24/2011) |
| 01/24/2011 | 21 | Statement of Intent. *Amended* Filed by Debtor Armando Francico Delgado Jr.. (Lux, Carl) (Entered: 01/24/2011) |
| 01/24/2011 | 22 | Statement of Financial Affairs *Amended* Filed by Debtor Armando Francico Delgado Jr.. (Lux, Carl) (Entered: 01/24/2011) |
| 01/26/2011 | 23 | Notice of continued meeting of creditors and appearance of debtor (11 USC 341(a)) Filed by. (Diamond (TR), Richard) (Entered: 01/26/2011) |
| 02/03/2011 | 24 | UST Statement of presumed abuse. The United States Trustee has reviewed all materials filed by the Debtor and has determined that the Debtor's case is presumed to be an abuse under Section 707 (b). Filed by United States Trustee. (Mar, Alvin) (Entered: 02/03/2011) |

| 02/05/2011 | 25 | BNC Certificate of Notice (RE: related document(s) 24 UST Statement of presumed abuse (BNC)) No. of Notices: 12. Service Date 02/05/2011. (Admin.) (Entered: 02/05/2011) |
| 02/18/2011 | 26 | Ex parte application Filed by Debtor Armando Francico Delgado Jr. (Lux, Carl) CORRECTION: This is an Ex parte Motion for continuance of meeting of creditors and appearance of debtor; Modified on 2/23/2011 (Wesley, Wendy Ann). (Entered: 02/18/2011) |
| 02/24/2011 | 27 | Order Denying Debtor's Ex Parte Motion to continue meeting of creditors scheduled for 2/24/11 @ 2:30pm. (Related Doc # 26 ) Signed on 2/24/2011 (Wesley, Wendy Ann) (Entered: 02/24/2011) |
| 02/26/2011 | 28 | BNC Certificate of Notice - PDF Document. (RE: related document(s) 27 Order on Generic Motion) No. of Notices: 1. Service Date 02/26/2011. (Admin.) (Entered: 02/26/2011) |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| Transaction Receipt | | | |
| 03/01/2011 13:22:55 | | | |
| **PACER Login:** | us7746 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:10-bk-63810-BB Fil or Ent: filed From: 12/1/2000 To: 3/1/2011 Doc From: 0 Doc To: 99999999 Term: included Format: html |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

# EXHIBIT 2

# EXHIBIT 2

B 22A (Official Form 22A) (Chapter 7) (12/10)

DELGADO, ARMANDO FRANCICO JR.

In re _____
            Debtor(s)

Case Number: 732-10-63810
            (If known)

According to the information required to be entered on this statement
(check one box as directed in Part I, III, or VI of this statement):

☑ **The presumption arises.**
☐ **The presumption does not arise.**
☐ **The presumption is temporarily inapplicable.**

## CHAPTER 7 STATEMENT OF CURRENT MONTHLY INCOME AND MEANS-TEST CALCULATION

In addition to Schedules I and J, this statement must be completed by every individual chapter 7 debtor. If none of the exclusions in Part I applies, joint debtors may complete one statement only. If any of the exclusions in Part I applies, joint debtors should complete separate statements if they believe this is required by § 707(b)(2)(C).

| | Part I.  MILITARY AND NON-CONSUMER DEBTORS |
|---|---|
| 1A | **Disabled Veterans.** If you are a disabled veteran described in the Declaration in this Part IA, (1) check the box at the beginning of the Declaration, (2) check the box for "The presumption does not arise" at the top of this statement, and (3) complete the verification in Part VIII. Do not complete any of the remaining parts of this statement.<br><br>☐ **Declaration of Disabled Veteran.** By checking this box, I declare under penalty of perjury that I am a disabled veteran (as defined in 38 U.S.C. § 3741(1)) whose indebtedness occurred primarily during a period in which I was on active duty (as defined in 10 U.S.C. § 101(d)(1)) or while I was performing a homeland defense activity (as defined in 32 U.S.C. §901(1)). |
| 1B | **Non-consumer Debtors.** If your debts are not primarily consumer debts, check the box below and complete the verification in Part VIII. Do not complete any of the remaining parts of this statement.<br><br>☐ **Declaration of non-consumer debts.** By checking this box, I declare that my debts are not primarily consumer debts. |
| 1C | **Reservists and National Guard Members; active duty or homeland defense activity.** Members of a reserve component of the Armed Forces and members of the National Guard who were called to active duty (as defined in 10 U.S.C. § 101(d)(1)) after September 11, 2001, for a period of at least 90 days, or who have performed homeland defense activity (as defined in 32 U.S.C. § 901(1)) for a period of at least 90 days, are excluded from all forms of means testing during the time of active duty or homeland defense activity and for 540 days thereafter (the "exclusion period"). If you qualify for this temporary exclusion, (1) check the appropriate boxes and complete any required information in the Declaration of Reservists and National Guard Members below, (2) check the box for "The presumption is temporarily inapplicable" at the top of this statement, and (3) complete the verification in Part VIII. **During your exclusion period you are not required to complete the balance of this form, but you must complete the form no later than 14 days after the date on which your exclusion period ends, unless the time for filing a motion raising the means test presumption expires in your case before your exclusion period ends.**<br><br>☐ **Declaration of Reservists and National Guard Members.** By checking this box and making the appropriate entries below, I declare that I am eligible for a temporary exclusion from means testing because, as a member of a reserve component of the Armed Forces or the National Guard<br><br>a. ☐ I was called to active duty after September 11, 2001, for a period of at least 90 days and<br>  ☐ I remain on active duty /or/<br>  ☐ I was released from active duty on _____, which is less than 540 days before this bankruptcy case was filed;<br><br>OR<br><br>b. ☐ I am performing homeland defense activity for a period of at least 90 days /or/<br>  ☐ I performed homeland defense activity for a period of at least 90 days, terminating on _____, which is less than 540 days before this bankruptcy case was filed. |

DOJ 22A Exhibit

B 22A (Official Form 22A) (Chapter 7) (12/10)                                                                                          2

## Part II. CALCULATION OF MONTHLY INCOME FOR § 707(b)(7) EXCLUSION

| 2 | **Marital/filing status.** Check the box that applies and complete the balance of this part of this statement as directed. | | |
|---|---|---|---|
| | a. ☐ Unmarried. **Complete only Column A ("Debtor's Income") for Lines 3-11.** | | |
| | b. ☐ Married, not filing jointly, with declaration of separate households. By checking this box, debtor declares under penalty of perjury: "My spouse and I are legally separated under applicable non-bankruptcy law or my spouse and I are living apart other than for the purpose of evading the requirements of § 707(b)(2)(A) of the Bankruptcy Code." **Complete only Column A ("Debtor's Income") for Lines 3-11.** | | |
| | c. ☑ Married, not filing jointly, without the declaration of separate households set out in Line 2.b above. **Complete both Column A ("Debtor's Income") and Column B ("Spouse's Income") for Lines 3-11.** | | |
| | d. ☐ Married, filing jointly. **Complete both Column A ("Debtor's Income") and Column B ("Spouse's Income") for Lines 3-11.** | | |

| | All figures must reflect average monthly income received from all sources, derived during the six calendar months prior to filing the bankruptcy case, ending on the last day of the month before the filing. If the amount of monthly income varied during the six months, you must divide the six-month total by six, and enter the result on the appropriate line. | | **Column A Debtor's Income** | **Column B Spouse's Income** |
|---|---|---|---|---|
| 3 | **Gross wages, salary, tips, bonuses, overtime, commissions.** | | $ | $ 11,310.60 |

| 4 | **Income from the operation of a business, profession or farm.** Subtract Line b from Line a and enter the difference in the appropriate column(s) of Line 4. If you operate more than one business, profession or farm, enter aggregate numbers and provide details on an attachment. Do not enter a number less than zero. **Do not include any part of the business expenses entered on Line b as a deduction in Part V.** | | | |
|---|---|---|---|
| | a. | Gross receipts | $ | |
| | b. | Ordinary and necessary business expenses | $ | |
| | c. | Business income | Subtract Line b from Line a | $ | $ |

| 5 | **Rent and other real property income.** Subtract Line b from Line a and enter the difference in the appropriate column(s) of Line 5. Do not enter a number less than zero. **Do not include any part of the operating expenses entered on Line b as a deduction in Part V.** | | | |
|---|---|---|---|
| | a. | Gross receipts | $ | |
| | b. | Ordinary and necessary operating expenses | $ | |
| | c. | Rent and other real property income | Subtract Line b from Line a | $ | $ |

| 6 | **Interest, dividends and royalties.** | $ | $ |
|---|---|---|---|
| 7 | **Pension and retirement income.** | $ | $ |

| 8 | **Any amounts paid by another person or entity, on a regular basis, for the household expenses of the debtor or the debtor's dependents, including child support paid for that purpose.** Do not include alimony or separate maintenance payments or amounts paid by your spouse if Column B is completed. Each regular payment should be reported in only one column; if a payment is listed in Column A, do not report that payment in Column B. | $ | $ |
|---|---|---|---|

| 9 | **Unemployment compensation.** Enter the amount in the appropriate column(s) of Line 9. However, if you contend that unemployment compensation received by you or your spouse was a benefit under the Social Security Act, do not list the amount of such compensation in Column A or B, but instead state the amount in the space below: | | | |
|---|---|---|---|
| | Unemployment compensation claimed to be a benefit under the Social Security Act   Debtor $ _____   Spouse $ _____ | | $ | $ |

DOJ 22A Exhibit

B 22A (Official Form 22A) (Chapter 7) (12/10)                                                                                              3

| 10 | Income from all other sources. Specify source and amount. If necessary, list additional sources on a separate page. **Do not include alimony or separate maintenance payments paid by your spouse if Column B is completed, but include all other payments of alimony or separate maintenance.** Do not include any benefits received under the Social Security Act or payments received as a victim of a war crime, crime against humanity, or as a victim of international or domestic terrorism. | | | |
|---|---|---|---|---|
| | a. | | $ | |
| | b. | | $ | |
| | Total and enter on Line 10 | | $ | $ |
| 11 | **Subtotal of Current Monthly Income for § 707(b)(7).** Add Lines 3 thru 10 in Column A, and, if Column B is completed, add Lines 3 through 10 in Column B. Enter the total(s). | | $        0.00 | $   11,310.60 |
| 12 | **Total Current Monthly Income for § 707(b)(7).** If Column B has been completed, add Line 11, Column A to Line 11, Column B, and enter the total. If Column B has not been completed, enter the amount from Line 11, Column A. | | $ | 11,310.60 |

## Part III. APPLICATION OF § 707(b)(7) EXCLUSION

| 13 | **Annualized Current Monthly Income for § 707(b)(7).** Multiply the amount from Line 12 by the number 12 and enter the result. | $ 135,727.20 |
|---|---|---|
| 14 | **Applicable median family income.** Enter the median family income for the applicable state and household size. (This information is available by family size at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) | |
| | a. Enter debtor's state of residence: California        b. Enter debtor's household size: ____4 | $   77,596.00 |
| 15 | **Application of Section 707(b)(7).** Check the applicable box and proceed as directed.<br><br>☐ **The amount on Line 13 is less than or equal to the amount on Line 14.** Check the box for "The presumption does not arise" at the top of page 1 of this statement, and complete Part VIII; do not complete Parts IV, V, VI or VII.<br><br>☑ **The amount on Line 13 is more than the amount on Line 14.** Complete the remaining parts of this statement. | |

## Complete Parts IV, V, VI, and VII of this statement only if required. (See Line 15.)

| | Part IV. CALCULATION OF CURRENT MONTHLY INCOME FOR § 707(b)(2) | | |
|---|---|---|---|
| 16 | Enter the amount from Line 12. | | $   11,310.60 |
| 17 | **Marital adjustment.** If you checked the box at Line 2.c, enter on Line 17 the total of any income listed in Line 11, Column B that was NOT paid on a regular basis for the household expenses of the debtor or the debtor's dependents. Specify in the lines below the basis for excluding the Column B income (such as payment of the spouse's tax liability or the spouse's support of persons other than the debtor or the debtor's dependents) and the amount of income devoted to each purpose. If necessary, list additional adjustments on a separate page. If you did not check box at Line 2.c, enter zero. | | |
| | a. | $ | |
| | b. | $ | |
| | c. | $ | |
| | Total and enter on Line 17. | | $        0.00 |
| 18 | **Current monthly income for § 707(b)(2).** Subtract Line 17 from Line 16 and enter the result. | | $   11,310.60 |

B 22A (Official Form 22A) (Chapter 7) (12/10)                                                                           4

| | **Part V. CALCULATION OF DEDUCTIONS FROM INCOME** | | |
|---|---|---|---|
| | **Subpart A: Deductions under Standards of the Internal Revenue Service (IRS)** | | |
| 19A | **National Standards: food, clothing and other items.** Enter in Line 19A the "Total" amount from IRS National Standards for Food, Clothing and Other Items for the applicable number of persons. (This information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) The applicable number of persons is the number that would currently be allowed as exemptions on your federal income tax return, plus the number of any additional dependents whom you support. | | $      1,371.00 |

| 19B | **National Standards: health care.** Enter in Line a1 below the amount from IRS National Standards for Out-of-Pocket Health Care for persons under 65 years of age, and in Line a2 the IRS National Standards for Out-of-Pocket Health Care for persons 65 years of age or older. (This information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) Enter in Line b1 the applicable number of persons who are under 65 years of age, and enter in Line b2 the applicable number of persons who are 65 years of age or older. (The applicable number of persons in each age category is the number in that category that would currently be allowed as exemptions on your federal income tax return, plus the number of any additional dependents whom you support.) Multiply Line a1 by Line b1 to obtain a total amount for persons under 65, and enter the result in Line c1. Multiply Line a2 by Line b2 to obtain a total amount for persons 65 and older, and enter the result in Line c2. Add Lines c1 and c2 to obtain a total health care amount, and enter the result in Line 19B. |

| | **Persons under 65 years of age** | | | | **Persons 65 years of age or older** | | |
|---|---|---|---|---|---|---|---|
| a1. | Allowance per person | 60.00 | a2. | | Allowance per person | | |
| b1. | Number of persons | 4 | b2. | | Number of persons | | |
| c1. | Subtotal | 240.00 | c2. | | Subtotal | | $       240.00 |

| 20A | **Local Standards: housing and utilities; non-mortgage expenses.** Enter the amount of the IRS Housing and Utilities Standards; non-mortgage expenses for the applicable county and family size. (This information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court). The applicable family size consists of the number that would currently be allowed as exemptions on your federal income tax return, plus the number of any additional dependents whom you support. | 647.00 $ |

| 20B | **Local Standards: housing and utilities; mortgage/rent expense.** Enter, in Line a below, the amount of the IRS Housing and Utilities Standards; mortgage/rent expense for your county and family size (this information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court) (the applicable family size consists of the number that would currently be allowed as exemptions on your federal income tax return, plus the number of any additional dependents whom you support); enter on Line b the total of the Average Monthly Payments for any debts secured by your home, as stated in Line 42; subtract Line b from Line a and enter the result in Line 20B. **Do not enter an amount less than zero.** |

| a. | IRS Housing and Utilities Standards; mortgage/rental expense | | $ | 1,807.00 | |
|---|---|---|---|---|---|
| b. | Average Monthly Payment for any debts secured by your home, if any, as stated in Line 42 | | $ | 2,500.00 | |
| c. | Net mortgage/rental expense | | Subtract Line b from Line a. | | $      0.00 |

| 21 | **Local Standards: housing and utilities; adjustment.** If you contend that the process set out in Lines 20A and 20B does not accurately compute the allowance to which you are entitled under the IRS Housing and Utilities Standards, enter any additional amount to which you contend you are entitled, and state the basis for your contention in the space below:<br><br>_____<br>_____<br>_____ | $ |

B 22A (Official Form 22A) (Chapter 7) (12/10)      5

| | | | | |
|---|---|---|---|---|
| 22A | **Local Standards: transportation; vehicle operation/public transportation expense.** You are entitled to an expense allowance in this category regardless of whether you pay the expenses of operating a vehicle and regardless of whether you use public transportation.<br><br>Check the number of vehicles for which you pay the operating expenses or for which the operating expenses are included as a contribution to your household expenses in Line 8.<br>☐ 0  ☐ 1  ☑ 2 or more.<br><br>If you checked 0, enter on Line 22A the "Public Transportation" amount from IRS Local Standards: Transportation.  If you checked 1 or 2 or more, enter on Line 22A the "Operating Costs" amount from IRS Local Standards: Transportation for the applicable number of vehicles in the applicable Metropolitan Statistical Area or Census Region. (These amounts are available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) | | | $ 566.00 |
| 22B | **Local Standards: transportation; additional public transportation expense.** If you pay the operating expenses for a vehicle and also use public transportation, and you contend that you are entitled to an additional deduction for your public transportation expenses, enter on Line 22B the "Public Transportation" amount from IRS Local Standards: Transportation. (This amount is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) | | | $ |
| 23 | **Local Standards: transportation ownership/lease expense; Vehicle 1.** Check the number of vehicles for which you claim an ownership/lease expense. (You may not claim an ownership/lease expense for more than two vehicles.)<br>☐ 1  ☑ 2 or more.<br><br>Enter, in Line a below, the "Ownership Costs" for "One Car" from the IRS Local Standards: Transportation (available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court); enter in Line b the total of the Average Monthly Payments for any debts secured by Vehicle 1, as stated in Line 42; subtract Line b from Line a and enter the result in Line 23. **Do not enter an amount less than zero.** | | | |
| | a. | IRS Transportation Standards, Ownership Costs | $ 496.00 | |
| | b. | Average Monthly Payment for any debts secured by Vehicle 1, as stated in Line 42 | $ 500.00 | |
| | c. | Net ownership/lease expense for Vehicle 1 | Subtract Line b from Line a. | $ 0.00 |
| 24 | **Local Standards: transportation ownership/lease expense; Vehicle 2.** Complete this Line only if you checked the "2 or more" Box in Line 23.<br><br>Enter, in Line a below, the "Ownership Costs" for "One Car" from the IRS Local Standards: Transportation (available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court); enter in Line b the total of the Average Monthly Payments for any debts secured by Vehicle 2, as stated in Line 42; subtract Line b from Line a and enter the result in Line 24. **Do not enter an amount less than zero.** | | | |
| | a. | IRS Transportation Standards, Ownership Costs | $ 496.00 | |
| | b. | Average Monthly Payment for any debts secured by Vehicle 2, as stated in Line 42 | $ 600.00 | |
| | c. | Net ownership/lease expense for Vehicle 2 | Subtract Line b from Line a. | $ 0.00 |
| 25 | **Other Necessary Expenses: taxes.** Enter the total average monthly expense that you actually incur for all federal, state and local taxes, other than real estate and sales taxes, such as income taxes, self-employment taxes, social-security taxes, and Medicare taxes. **Do not include real estate or sales taxes.** | | | $ 2,933.30 |
| 26 | **Other Necessary Expenses: involuntary deductions for employment.** Enter the total average monthly payroll deductions that are required for your employment, such as retirement contributions, union dues, and uniform costs. **Do not include discretionary amounts, such as voluntary 401(k) contributions.** | | | $ |
| 27 | **Other Necessary Expenses: life insurance.** Enter total average monthly premiums that you actually pay for term life insurance for yourself. **Do not include premiums for insurance on your dependents, for whole life or for any other form of insurance.** | | | $ 27.16 |
| 28 | **Other Necessary Expenses: court-ordered payments.** Enter the total monthly amount that you are required to pay pursuant to the order of a court or administrative agency, such as spousal or child support payments. **Do not include payments on past due obligations included in Line 44.** | | | $ |

B 22A (Official Form 22A) (Chapter 7) (12/10)                                                                                                          6

| 29 | Other Necessary Expenses: education for employment or for a physically or mentally challenged child. Enter the total average monthly amount that you actually expend for education that is a condition of employment and for education that is required for a physically or mentally challenged dependent child for whom no public education providing similar services is available. | $ |
|---|---|---|
| 30 | Other Necessary Expenses: childcare. Enter the total average monthly amount that you actually expend on childcare—such as baby-sitting, day care, nursery and preschool. Do not include other educational payments. | $ 300.00 |
| 31 | Other Necessary Expenses: health care. Enter the total average monthly amount that you actually expend on health care that is required for the health and welfare of yourself or your dependents, that is not reimbursed by insurance or paid by a health savings account, and that is in excess of the amount entered in Line 19B. Do not include payments for health insurance or health savings accounts listed in Line 34. | $ 60.00 |
| 32 | Other Necessary Expenses: telecommunication services. Enter the total average monthly amount that you actually pay for telecommunication services other than your basic home telephone and cell phone service—such as pagers, call waiting, caller id, special long distance, or internet service—to the extent necessary for your health and welfare or that of your dependents. Do not include any amount previously deducted. | $ |
| 33 | Total Expenses Allowed under IRS Standards. Enter the total of Lines 19 through 32. | $ 6,144.46 |

## Subpart B: Additional Living Expense Deductions

## Note: Do not include any expenses that you have listed in Lines 19-32

<table>
<tr><td rowspan="5">34</td><td colspan="3">Health Insurance, Disability Insurance, and Health Savings Account Expenses. List the monthly expenses in the categories set out in lines a-c below that are reasonably necessary for yourself, your spouse, or your dependents.</td><td></td></tr>
<tr><td>a.</td><td>Health Insurance</td><td>$ 508.15</td><td></td></tr>
<tr><td>b.</td><td>Disability Insurance</td><td>$ 22.51</td><td></td></tr>
<tr><td>c.</td><td>Health Savings Account</td><td>$</td><td></td></tr>
<tr><td colspan="3">Total and enter on Line 34<br><br>If you do not actually expend this total amount, state your actual total average monthly expenditures in the space below:<br>$ _____</td><td>$ 530.66</td></tr>
</table>

| 35 | Continued contributions to the care of household or family members. Enter the total average actual monthly expenses that you will continue to pay for the reasonable and necessary care and support of an elderly, chronically ill, or disabled member of your household or member of your immediate family who is unable to pay for such expenses. | $ |
|---|---|---|
| 36 | Protection against family violence. Enter the total average reasonably necessary monthly expenses that you actually incurred to maintain the safety of your family under the Family Violence Prevention and Services Act or other applicable federal law. The nature of these expenses is required to be kept confidential by the court. | $ |
| 37 | Home energy costs. Enter the total average monthly amount, in excess of the allowance specified by IRS Local Standards for Housing and Utilities, that you actually expend for home energy costs. You must provide your case trustee with documentation of your actual expenses, and you must demonstrate that the additional amount claimed is reasonable and necessary. | $ |
| 38 | Education expenses for dependent children less than 18. Enter the total average monthly expenses that you actually incur, not to exceed $147.92* per child, for attendance at a private or public elementary or secondary school by your dependent children less than 18 years of age. You must provide your case trustee with documentation of your actual expenses, and you must explain why the amount claimed is reasonable and necessary and not already accounted for in the IRS Standards. | $ 225.00 |

*Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

DOJ 22A Exhibit

B 22A (Official Form 22A) (Chapter 7) (12/10)                                                                                                7

| 39 | Additional food and clothing expense. Enter the total average monthly amount by which your food and clothing expenses exceed the combined allowances for food and clothing (apparel and services) in the IRS National Standards, not to exceed 5% of those combined allowances. (This information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) **You must demonstrate that the additional amount claimed is reasonable and necessary.** | $ | 0.00 |
|---|---|---|---|
| 40 | **Continued charitable contributions.** Enter the amount that you will continue to contribute in the form of cash or financial instruments to a charitable organization as defined in 26 U.S.C. § 170(c)(1)-(2). | $ | |
| 41 | **Total Additional Expense Deductions under § 707(b).** Enter the total of Lines 34 through 40 | $ | 755.66 |

## Subpart C: Deductions for Debt Payment

**Future payments on secured claims.** For each of your debts that is secured by an interest in property that you own, list the name of the creditor, identify the property securing the debt, state the Average Monthly Payment, and check whether the payment includes taxes or insurance. The Average Monthly Payment is the total of all amounts scheduled as contractually due to each Secured Creditor in the 60 months following the filing of the bankruptcy case, divided by 60. If necessary, list additional entries on a separate page. Enter the total of the Average Monthly Payments on Line 42.

| 42 | | Name of Creditor | Property Securing the Debt | Average Monthly Payment | Does payment include taxes or insurance? | | |
|---|---|---|---|---|---|---|---|
| | a. | | Mortgage | $ 2,500.00 | ☐ yes ☐ no | | |
| | b. | | Vehicle 1 | $ 500.00 | ☐ yes ☐ no | | |
| | c. | | Vehicle 2 | $ 600.00 | ☐ yes ☐ no | | |
| | | | Other | Total: Add Lines a, b and c. | | $ | 3,600.00 |

**Other payments on secured claims.** If any of debts listed in Line 42 are secured by your primary residence, a motor vehicle, or other property necessary for your support or the support of your dependents, you may include in your deduction 1/60th of any amount (the "cure amount") that you must pay the creditor in addition to the payments listed in Line 42, in order to maintain possession of the property. The cure amount would include any sums in default that must be paid in order to avoid repossession or foreclosure. List and total any such amounts in the following chart. If necessary, list additional entries on a separate page.

| 43 | | Name of Creditor | Property Securing the Debt | 1/60th of the Cure Amount | | |
|---|---|---|---|---|---|---|
| | a. | | | $ | | |
| | b. | | | $ | | |
| | c. | | | $ | | |
| | | | | Total: Add Lines a, b and c | $ | 0.00 |

| 44 | **Payments on prepetition priority claims.** Enter the total amount, divided by 60, of all priority claims, such as priority tax, child support and alimony claims, for which you were liable at the time of your bankruptcy filing. **Do not include current obligations, such as those set out in Line 28.** | $ | |
|---|---|---|---|

B 22A (Official Form 22A) (Chapter 7) (12/10)                                                                                                  8

| | | **Chapter 13 administrative expenses.** If you are eligible to file a case under chapter 13, complete the following chart, multiply the amount in line a by the amount in line b, and enter the resulting administrative expense. | | | |
|---|---|---|---|---|---|
| **45** | a. | Projected average monthly chapter 13 plan payment. | $ | 810.48 | |
| | b. | Current multiplier for your district as determined under schedules issued by the Executive Office for United States Trustees. (This information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) | x | 0.10 | |
| | c. | Average monthly administrative expense of chapter 13 case | Total: Multiply Lines a and b | | $ 81.05 |
| **46** | | **Total Deductions for Debt Payment.** Enter the total of Lines 42 through 45. | | | $ 3,681.05 |

## Subpart D: Total Deductions from Income

| **47** | **Total of all deductions allowed under § 707(b)(2).** Enter the total of Lines 33, 41, and 46. | $ 10,581.17 |
|---|---|---|

## Part VI. DETERMINATION OF § 707(b)(2) PRESUMPTION

| **48** | Enter the amount from Line 18 (Current monthly income for § 707(b)(2)) | $ 11,310.60 |
|---|---|---|
| **49** | Enter the amount from Line 47 (Total of all deductions allowed under § 707(b)(2)) | $ 10,581.17 |
| **50** | **Monthly disposable income under § 707(b)(2).** Subtract Line 49 from Line 48 and enter the result | $ 729.43 |
| **51** | **60-month disposable income under § 707(b)(2).** Multiply the amount in Line 50 by the number 60 and enter the result. | $ 43,765.80 |

| **52** | **Initial presumption determination.** Check the applicable box and proceed as directed. |
|---|---|
| | ☐ **The amount on Line 51 is less than $7,025\*.** Check the box for "The presumption does not arise" at the top of page 1 of this statement, and complete the verification in Part VIII. Do not complete the remainder of Part VI. |
| | ☑ **The amount set forth on Line 51 is more than $11,725\*.** Check the box for "The presumption arises" at the top of page 1 of this statement, and complete the verification in Part VIII. You may also complete Part VII. Do not complete the remainder of Part VI. |
| | ☐ **The amount on Line 51 is at least $7,025\*, but not more than $11,725\*.** Complete the remainder of Part VI (Lines 53 through 55). |

| **53** | **Enter the amount of your total non-priority unsecured debt** | $ |
|---|---|---|
| **54** | **Threshold debt payment amount.** Multiply the amount in Line 53 by the number 0.25 and enter the result. | $ |

| **55** | **Secondary presumption determination.** Check the applicable box and proceed as directed. |
|---|---|
| | ☐ **The amount on Line 51 is less than the amount on Line 54.** Check the box for "The presumption does not arise" at the top of page 1 of this statement, and complete the verification in Part VIII. |
| | ☐ **The amount on Line 51 is equal to or greater than the amount on Line 54.** Check the box for "The presumption arises" at the top of page 1 of this statement, and complete the verification in Part VIII. You may also complete Part VII. |

## Part VII: ADDITIONAL EXPENSE CLAIMS

| **56** | **Other Expenses.** List and describe any monthly expenses, not otherwise stated in this form, that are required for the health and welfare of you and your family and that you contend should be an additional deduction from your current monthly income under § 707(b)(2)(A)(ii)(I). If necessary, list additional sources on a separate page. All figures should reflect your average monthly expense for each item. Total the expenses. | | |
|---|---|---|---|
| | | Expense Description | Monthly Amount |
| | a. | | $ |
| | b. | | $ |
| | c. | | $ |
| | | Total: Add Lines a, b and c | $ 0.00 |

\**Amounts are subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

DOJ 22A Exhibit

B 22A (Official Form 22A) (Chapter 7) (12/10)                                                                 9

| | Part VIII: VERIFICATION |
|---|---|

I declare under penalty of perjury that the information provided in this statement is true and correct. *(If this is a joint case, both debtors must sign.)*

57

Date: _____        Signature: _____
                                                  *(Debtor)*

Date: _____        Signature: _____
                                                  *(Joint Debtor, if any)*

DOJ 22A Exhibit

# EXHIBIT 3

# EXHIBIT 3



**U. S. Department of Justice**

*United States Trustee*
*Central District of California*

| | |
|---|---|
| *725 South Figueroa Street* | *Telephone (213) 894-6811* |
| *Suite 2600* | *Facsimile (213) 894-7605* |
| *Los Angeles, CA 90017-5524* | *Website www.usdoj.gov/ust/r16* |

Via Facsimile
Original by US Postal Mail

January 11, 2011

Carl A. Lux, Esq.
Law Office of Carl A. Lux
2135 Santa Anita Ave
Altadena, CA 91001

### REVIEW UNDER 11 U.S.C. §707

RE:Armando Franciso Delgado Jr.; CASE NO. 2:10-bk-63810-BB

Dear Mr. Lux:

The Office of the United States Trustee has reviewed the underlying Petition, Schedules and Statement of Financial Affairs. Pursuant to 28 U.S.C. § 586(a)(3)(D), the United States Trustee supervises the administration of bankruptcy cases and, when appropriate, takes such action as the United States Trustee deems appropriate to ensure that all schedules, statements, reports and fees required under Title 11 are properly and timely filed. The United States Trustee is also charged with the responsibility to prosecute motions to dismiss pursuant to 11 U.S.C. § 707.

Based upon our preliminary analysis of the information provided in this bankruptcy petition, schedules and form 22A, currently on file with the Court, the presumption of abuse may arise under 11 U.S.C. § 707(b)(2) in this case. Our specific concerns include inconsistencies with means test and Schedules I and J etc. Therefore, to better clarify this/these issue(s), please provide the following additional information and documentation, together with any further explanation you feel is necessary, to this office **on or before January 20, 2011**.

1.   Please provide the UST with copies of:
   a.   State and Federal Tax Returns for 2009 (include business returns for 2008 and 2009 if filed separately.;
   b.   W-2, W-2G and 1099 statements for 2009 and 2010;
   c.   Any and all financial accounts including but not limited to monthly bank statements (credit union statements, stock accounts etc.) for the period covering June 1, 2010 (business and personal), this also pertains to closed accounts (for the Debtor and his non filing spouse). Also include a check register or other such document to identify the source of deposits and identify disbursements by payee & purpose;
   d.   All pay advices for Debtor's non filing spouse from 6/1/10 thru 12/31/10 as non-debtor spousal income may be considered in our analysis for a motion under 11 U.S.C. Section 707(b).
   e.   **Schedule J was left blank when you filed the original Schedules and filed the amended Schedules on 1/10/11. This document must disclose the expenses of the estate from items 1-20. In addition you are to provide the following**

1

documentation:

I. Mortgage - a copy of the current mortgage statement for each lien holder (there appear to be 2 lien holders) and proof of monthly payments, if delinquent please explain. Also provide a copy of the *annual tax bill*, and indicate if the taxes are escrowed in the mortgage payments.

ii. Insurance - for the *auto insurance* provide a copy of the policy declarations page, submit a current statement, and proof of current monthly payment. *homeowners insurance, and health insurance* provide the same as above, for *life insurance* provide a copy of the policy most recent statement and proof of payment.

iii. Auto payments - disclose each vehicle owned, provide a copy of the most recent statement, monthly payments and documentation of remaining balance if not owned free and clear.

iv. Alimony-payments of support etal (item 14 & 15) provide a copy of the court order and proof of payments from 6/1/10 to the date of filing.

vi. Charitable Donations - proof of monetary donations expenses from 6/1/10 to the date of filing

2. **Schedule I was left blank when you filed the original Schedules and filed the amended Schedules on 1/10/11. This document must disclose the income of the estate and payroll deductions etc. for the Debtor and his non filing spouse.**

3. Please provide documentation for the expenses of the business that was part of the document filed on 1/10/11 in court for the months of 6/1/10 thru 11/1/10. Also, please provide a copy of the Debtor's current business license.

Your response should also address any special circumstances or issues that are not readily apparent from the Schedules and Statement of Financial Affairs. It is important for the UST to have a complete understanding of the Debtor's financial picture in order to properly evaluate this case.

Please note this production of documents does not waive your obligation to provide the Chapter 7 trustee with the documents required pursuant to 11 U.S.C. § 521(e)(2). Please direct your response to this letter to the undersigned at the above address. Responses via CD/Rom, floppy disk or email attachments are not acceptable for security and reliability reasons. Further, please refrain from submitting original documents as your response to our inquiry letters will not be returned.

Be advised that if the requested information is not received on or before **January 20, 2011**, the UST may file a motion with the court requesting that this case be dismissed. If you have any additional questions regarding this letter please contact me at (213) 894-4936. Thank you for your anticipated cooperation.

Very truly yours,

Wendy Carole Sadovnick
Bankruptcy Analyst

cc:   Richard Diamond, Chapter 7 Trustee
      Alvin Mar, UST Trial Attorney

2

**44**

```
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
X                                                                                  X
X                            TRANSACTION REPORT                        P. 01       X
X                            ──────────────────                                    X
X                                                          JAN-11-2011 TUE 11:13 AM X
X      FOR:  USTLA                  2138946439                                     X
X                                                                                  X
X─────────────────────────────────────────────────────────────────────────────────
X     SEND                                                                          X
X                                                                                  X
X   DATE  START    RECEIVER       TX TIME   PAGES TYPE        NOTE          M#  DP  X
X─────────────────────────────────────────────────────────────────────────────────
X   JAN-11 11:12 AM 918887308950    1'13"    3  FAX TX        OK            347     X
X─────────────────────────────────────────────────────────────────────────────────
X                                                                                  X
X                                          TOTAL :   1M 13S  PAGES:  3             X
X                                                                                  X
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
```



# U. S. Department of Justice
Office for US Trustees - Los Angeles
725 So. Figueroa Street, Suite 2600
Los Angeles, CA 90017-5418
213-894-6811

## *FACSIMILE    TRANSMISSION*

**To:  C.Lux/ Chapter 7 Trustee Diamond**

**Fax No.:  (888)730-8950**

**From:  Wendy Carole Sadovnick**
**Office:    U. S. Trustee- Los Angeles - Region 16**

**Re:    10- 63810 BB   Delgado**
**Date:    1/11/2011    Fax No. :  (213) 894-2603    Voice No.:  (213) 894-4936**
Total number of pages (including this cover sheet):

**Message:  INQUIRY LETTER - RESPOND BY: JANUARY 20, 2011.**

```
****************************************************************************
*                                                                    P. 01 *
*                          TRANSACTION REPORT                              *
*                          -------------------                             *
*                                                   JAN-11-2011 TUE 11:15 AM *
*        FOR:  USTLA                2138946439                             *
*                                                                          *
*-------------------------------------------------------------------------*
*     SEND                                                                 *
*   DATE  START   RECEIVER       TX TIME   PAGES TYPE      NOTE       M#  DP *
*-------------------------------------------------------------------------*
*   JAN-11 11:14 AM R DIAMOND      33"      3  FAX TX      OK         348    *
*-------------------------------------------------------------------------*
*                                  TOTAL :        33S  PAGES:  3           *
****************************************************************************
```



# U. S. Department of Justice

Office for US Trustees - Los Angeles
725 So. Figueroa Street, Suite 2600
Los Angeles, CA 90017-5418
213-894-6811

## *FACSIMILE   TRANSMISSION*

To:  C.Lux/ Chapter 7 Trustee Diamond

Fax No.:  (888)730-8950

From:  Wendy Carole Sadovnick
Office:    U. S. Trustee- Los Angeles - Region 16

Re:        10- 63810 BB   Delgado
Date:     1/11/2011   Fax No. :  (213) 894-2603    Voice No.:  (213) 894-4936
Total number of pages (including this cover sheet):

Message:  INQUIRY LETTER - RESPOND BY: JANUARY 20, 2011.

## Sadovnick, Wendy  (USTP)

| | |
|---|---|
| **From:** | Sadovnick, Wendy  (USTP) |
| **Sent:** | Thursday, January 27, 2011 2:07 PM |
| **To:** | 'carlandrewlux@gmail.com' |
| **Cc:** | Mar, Alvin  (USTP) |
| **Subject:** | 10-63810BB |
| **Attachments:** | INquiry Ltr.pdf |

Mr. Lux,

The Debtor and the appearance attorney were at the 341(a) on 1/24/11, the meeting was continued to 2/24/11 @2:30. .
To date there has been no response from your office to the Inquiry letter that was sent to you  on 1/11/11. We have
requested certain documents. I have called your office but have not been able to reach you. The amended means test
that you filed  on 1/24/11 has many  material errors. The same can be said about your amended Schedule I filed
1/24/11. The Debtor indicated at the 341(a) that he was earning money and yet there is no income listed for him on
Schedule I. I would appreciate hearing from you . I can be reached on my direct line at 213 894 4936.  Thank you

# EXHIBIT 4

# EXHIBIT 4

## Sadovnick, Wendy  (USTP)

| | |
|---|---|
| **From:** | Carl Andrew Lux <carlandrewlux@gmail.com> |
| **Sent:** | Thursday, January 27, 2011 3:51 PM |
| **To:** | Sadovnick, Wendy  (USTP) |
| **Cc:** | Mar, Alvin  (USTP) |
| **Subject:** | Re: 10-63810BB |

Dear Ms. Sadovnick,

Joe Collier informed me about yesterday's hearing. I am reviewing this file and will be in contact as soon as possible.

Best regards,

Carl A. Lux

On Thu, Jan 27, 2011 at 5:07 PM, Sadovnick, Wendy (USTP) <Wendy.Sadovnick@usdoj.gov> wrote:

Mr. Lux,


The Debtor and the appearance attorney were at the 341(a) on 1/24/11, the meeting was continued to 2/24/11 @2:30. . To date there has been no response from your office to the Inquiry letter that was sent to you on 1/11/11. We have requested certain documents. I have called your office but have not been able to reach you. The amended means test that you filed on 1/24/11 has many  material errors. The same can be said about your amended Schedule I filed 1/24/11. The Debtor indicated at the 341(a) that he was earning money and yet there is no income listed for him on Schedule I. I would appreciate hearing from you . I can be reached on my direct line at 213 894 4936. Thank you

1

# EXHIBIT 5

# EXHIBIT 5

**Ralphs**    Pay Period From 10/25/10 To 10/31/10    Pay Date: 11/05/10

| EARNINGS | HOURS | RATE | CURRENT AMOUNT | DESCRIPTION | CURRENT AMOUNT | YTD AMOUNT |
|---|---|---|---|---|---|---|
| Regular Pay | 38.60 | 58.7500 | 2,267.75 | ---Gross--- | 2,267.75 | 113,106.04 |
| HSE ER Post | | | 34.09 | Federal Tax | 275.06 | 14,607.07 |
| GTL Prem | | | 4.64 | Soc Sec W/H | 15.23 | 6,621.60 |
| | | | | Medicare W/H | 31.17 | 1,576.21 |
| | | | | CA Calif Sta | 107.89 | 5,501.69 |
| | | | | CA Calif SDI | | 1,026.48 |
| | | | | Stk Div Rev | | 2.38 |
| | | | | MEDICAL | 22.03 | 947.29 |
| | | | | HSE | | 471.15 |
| | | | | HSE | 99.47 | 3,633.05 |
| | | | | PAI | 1.33 | 57.19 |
| | | | | H&W Arrears | | 22.03 |
| | | | | PAI Arrears | | 1.33 |
| | | | | 401K NU % | 272.13 | 13,572.42 |
| | | | | Depend. Life | 1.89 | 81.27 |
| | | | | LTD | 5.17 | 220.00 |
| | | | | VOL. LIFE | | 182.55 |
| | | | | Grp Legal | 3.43 | 147.49 |
| | | | | Dep Life Arr | | 1.89 |
| | | | | LTD Arrears | | 5.10 |
| | | | | Vol. Life Ar | | 5.87 |
| | | | | Grp Legal Ar | | 3.43 |

FILING STATUS: M  EXEMPTIONS: FEDERAL      STATE

**CHERYL A. DELGADO**          Advce #: 8929826
TOTAL GROSS    2,267.75    Emp# 315353
DEDUCTIONS      839.48
NET PAY        1,428.27

------ REMOVE DOCUMENT ALONG THIS PERFORATION ------

THIS DOCUMENT HAS A BLUE BACKGROUND ON WHITE PAPER ON FACE AND A THERMOCHROMIC INK MARK ON BACK THAT RESPONDS TO WARMTH, VOID IF NOT PRESENT.

**Ralphs**

DEPOSITED TO:

| | | ADVICE NO. | 8929826 |
|---|---|---|---|
| | | DATE | 11/05/10 |

| Transit# | Bank Name | Deposit Date | Deposit Amount |
|---|---|---|---|
| 322271627 | Washington Mutual, Californ ia | 11/05/10 | 1,203.27 |
| 322078998 | Clearpath FCU, CA | 11/05/10 | 225.00 |

Total Deposit  $   1,428.27

Employee #      315353

**** AUTO DEPOSIT - NOT NEGOTIABLE **** AUTO DEPOSIT - NOT NEGOTIABLE ****

CHERYL A. DELGADO
734 ANDRE ST
MONROVIA CA
       91016

THIS IS NOT A CHECK

A SATISFIED CUSTOMER MADE THIS PAYCHECK POSSIBLE

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**725 South Figueroa Street, Suite 2600, Los Angeles, California 90017-1574**

A true and correct copy of the foregoing document described as: United States Trustee's Notice of Motion and Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. §707(b)(1), (b)(2) and (3)(B) and Contingent Motion to Extend Bar Date for Filing Complaint Under 11 U.S.C. §727 Objecting to Debtors' Discharge; Memorandum of Points and Authorities and Declaration of Wendy Carole Sadovnick in Support Thereof
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.      TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On __3/3/11__  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

**SEE ATTACHED SERVICE LIST (IF APPLICABLE)**

☒        Service information continued on attached page

**II.      SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On __3/3/11__  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**SEE ATTACHED SERVICE LIST (IF APPLICABLE)**

☒        Service information continued on attached page

**III.      SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on___**3/3/11**__ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed. **Upon filing I will be giving a field document to a Court delivery service consistent with our normal business practice, with instructions to deliver the copy to the bin outside the suite (Court Manual Appendix F), as follows:**

**SEE ATTACHED SERVICE LIST (IF APPLICABLE)**

☒        Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| 3/3/11 | Helen Cruz | |
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                          **F.9013-3.1.PROOF.OF.SERVICE**

## ADDITIONAL SERVICE INFORMATION

**I.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

| **Name** | **Capacity** | **Email Address** |
|---|---|---|
| Carl A. Lux | Counsel for Debtors | carlandrewlux@gmail.com |
| Richard K. Diamond | Chapter 7 Trustee | jlv@dgdk.com |
| United States Trustee | United States Trustee | ustpregion16.la.ecf@usdoj.gov |
| Christopher M. McDermott | On behalf of Interested Party, Courtesy NEF | ecfcacb@piteduncan.com |
| Jennifer H. Wang | On behalf of Interested Party, Courtesy NEF | jwang@cookseylaw.com |

**II.   SERVED BY U.S. MAIL OR OVERNIGHT MAIL:**

**Debtors:**
Armando Francico Delgado, Jr.
Cheryl Delgado
234 Andre Street
Monrovia, CA  91016

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL:**

The Honorable Sheri Bluebond
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street
Bin Outside of Suite 1482
Los Angeles, CA 90012-3332

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

# F.9013-3.1.PROOF.OF.SERVICE